THE PEOPLE *ex rel.* Hillel Lodge No. 72, I. O. B. B.

*v.*

JAMES A. ROSE, Secretary of State.

*Opinion filed February 17, 1904.*

1. CORPORATIONS—*term "active business," as used in the act requiring annual report, construed.* The term "active business," as used in sections 2 and 7 of the act of 1901, (Laws of 1901, p. 124,) requiring corporations to report annually to the Secretary of State, means the doing of those things which the corporation is authorized to do by its charter.

2. SAME—*act of 1901, requiring annual report, applies to corporations not for pecuniary profit.* The act of 1901, (Laws of 1901, p. 124,) requiring corporations to report annually to the Secretary of State, includes within its terms corporations not for pecuniary profit.

3. SAME—*purpose of act requiring annual report.* The purpose of the act of 1901, requiring corporations to report annually to the Secretary of State, is to secure evidence once a year that the corporation is exercising its powers, and the effect of a failure to make the report is to make a *prima facie* case of non-user.

4. SAME—*failure to report under act of 1901 does not work an absolute forfeiture.* The cancellation which the Secretary of State is required by the act of 1901 to enter upon his records in case of the failure of a corporation to make annual report, does not, of itself, work a forfeiture of the corporation's charter, but is simply *prima facie* evidence of non-user, which may be availed of by the People in a proceeding to forfeit the charter.

5. SAME—*corporations organized under general law are subject to statutory regulation.* Under section 9 of the general Incorporation act, corporations organized under the general law are subject to statutory regulation.

6. CONSTITUTIONAL LAW—*act of 1901, requiring annual report, is constitutional.* The act of 1901, (Laws of 1901, p. 124,) requiring corporations to report annually to the Secretary of State, is not unconstitutional, as authorizing absolute forfeiture of a charter by the Secretary of State, but is a valid exercise of legislative power to establish a new rule of evidence.

MAGRUDER, J., dissenting.

ORIGINAL petition for *mandamus.*

This is a petition for *mandamus,* filed in this court at the October term, 1902, by Hillel Lodge No. 72, Independent Order Bnai Brith, in the name of the People of

the State of Illinois, against James A. Rose, Secretary of
State of Illinois. The petition alleges that petitioner is
a corporation not for pecuniary profit; that its charter
issued on February 21, 1900, and was duly recorded in
the recorder's office of Cook county, Illinois, on March 3,
1900; that petitioner is organized and existing under the
laws of this State; that it complied with all the laws
applicable to its incorporation and has ever since com-
plied with the provisions of its charter and the laws of
Illinois. It further alleges that respondent, as Secre-
tary of State, has informed petitioner that its charter
has been canceled and forfeited by him because of its
failure to comply with the act of the legislature entitled
"An act requiring corporations to make annual report to
the Secretary of State, and providing for the cancella-
tion of articles of incorporation for failure to do so, and
to repeal a certain act therein named," approved May 10,
1901; that respondent claims the right to forfeit and can-
cel the charter because of the violation of section 2 of
the act, and for failure to make a report and pay the fee
mentioned in said section 2. The petition then alleges
that respondent has informed petitioner that he will re-
instate it upon his records upon payment of $20 to him
by it, and upon petitioner filing in his office an affidavit
stating the facts required by section 2 of the act, and
stating the further fact that petitioner was at the time
of default, and still is, engaged in "active business" un-
der its charter; and the petition then alleges that peti-
tioner refuses to comply with sections 2 and 7 of said
act because it is not engaged in "active business" and can
not make affidavit to that fact, but is a non-profitable
and *quasi*-charitable corporation. The petition avers
that the act has no reference to corporations not for
pecuniary profit, and also alleges that the act is uncon-
stitutional. It sets out that the charters of twenty-five
thousand corporations have been canceled by respond-
ent, acting under said act, and that the petition is filed

on behalf of all of them; that respondent is still Secretary of State, and has it within his power to revoke the cancellation of petitioner's charter, but that he refuses so to do.

The prayer of the petition is that the court order and command said James A. Rose, as such Secretary of State, to cancel on his records the forfeiture and cancellation of petitioner's charter without the payment of $20.

To the petition of the lodge, James A. Rose, Secretary of State, filed a general demurrer.

The questions presented for determination are: First, does the act apply to corporations not organized for pecuniary profit; second, is the act constitutional.

ADOLPH MOSES, for petitioner:

The General Assembly has no power to declare a forfeiture of a corporate franchise, nor to empower the Secretary of State to do so. Such an act is an exercise of judicial power. *People* v. *Mallary,* 195 Ill. 582; *Bruffett* v. *Railway Co.* 25 id. 353.

The petitioner has been deprived of the "due process of law" guaranteed by the State and national constitutions. Art. 2, par. 2, and 14th amendment to constitution; *Westervelt* v. *Gregg,* 12 N. Y. 209; *Campbell* v. *Campbell,* 63 Ill. 462; *Board of Education* v. *Bakewell,* 122 id. 348; *Shields* v. *Ohio,* 95 U. S. 25.

A single act of non-feasance cannot become a ground for forfeiture of a corporation. High on Ex. Legal Rem. sec. 648; *Commonwealth* v. *Bank,* 28 Pa. St. 383; *Railroad Co.* v. *People,* 67 Ill. 11; *State* v. *Company,* 120 Ind. 337.

A proceeding for the dissolution of a corporation, even by a court, must be based on legal notice. 5 Thompson on Corp. sec. 6700.

Corporations are "persons," within the meaning of the fourteenth amendment to the constitution of the United States. *Santa Clara Co.* v. *Railroad Co.* 118 U. S. 394; *Railway Co.* v. *Mackey,* 127 id. 205.

Forfeiture of. property cannot be adjudged by legislative act. Cooley's Const. Lim. (6th ed.) 444; 12 Am. Digest, (Century ed.) 2422; *Poppen* v. *Holmes,* 44 Ill. 360; *Hall* v. *Marks,* 34 id. 358; *Mapes* v. *Scott,* 94 id. 379; *Wilmans* v. *Bank,* 1 Gilm. 667; *People* v. *Trustees,* 111 Ill. 171; *Railway Co.* v. *Belleville,* 47 Ill. App. 388.

H. J. HAMLIN, Attorney General, for respondent.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The first and second sections of the statute under consideration are as follows:

"Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That every corporation hereafter organized under the laws of this State shall, before receiving a certificate of complete organization, file with the Secretary of State a statement setting forth the post-office address of its business office, giving street and number.

"Sec. 2. Every incorporated company, other than railroad, banking, building and loan and insurance companies, existing by virtue of any general or special law of this State, or hereafter organized by virtue of any law of this State, shall annually, between the first day of February and the first day of March, report to the Secretary of State the location of its principal office in this State, with town, street and number; the name of its officers, with their residence, stating the town, street and number, with the date of the expiration of their respective terms of office; whether or not the corporation is pursuing an active business under its charter and the kind of business engaged in, if any, which said report shall be made under the seal of the corporation and shall be signed and sworn to by the president, secretary or other officer of the corporation, and in case said corporation is in the hands of an assignee or receiver, then such report shall be signed and sworn to by such assignee or receiver, which said report, together with a fee of one

dollar for filing the same, shall be sent to the Secretary of State, in whose office it shall be filed. The Secretary of State shall in no case receive or file said report until said fee is paid, and a failure to make said report and pay said fee shall be *prima facie* evidence that said corporation is out of business, and shall work a forfeiture of the charter of such corporation. And it is hereby made the duty of the Secretary of State to enter upon the records of his office, as soon as practicable after default in making such report, the cancellation of the charters of all corporations failing to make said report at the time and in the manner herein provided."

Section 3 provides that the Secretary of State shall furnish blanks for making the report contemplated by section 2, to each corporation whose address is disclosed by the records of his office, with a notice stating the effect of a failure to make the report, and provides for notice by publication to corporations whose addresses are not so disclosed.

Sections 4 and 5 provide for proof of publication, and fix the rate of compensation for publication of such notice.

Section 6 provides for filing with the recorder of deeds in each county a list of the corporations complying with section 2 of the statute, together with the names and addresses of their principal officers and the location of the principal business office of the corporation in this State, and a list of those failing to comply with section 2 after having in one or more years made the report required by that section.

Section 7 is as follows: "It is further provided, that any corporation which is pursuing an active business under its charter, failing to make said report at the time provided by law may, at any time, within one year from such default, be re-instated upon the records in the office of the Secretary of State upon the payment of a fee in the sum of $20 for such re-instatement and filing in said office an affidavit stating all the facts required in sec-

tion 3 (2) of this act, and in addition thereto, the fact
that it was at the time of such default, and still is, en-
gaged in active business under its charter."

The remaining sections provide for the payment of
expenses of publication and repeal an earlier act.

The language of this act is broad enough to include
corporations not for pecuniary profit. The first section
applies to "every corporation." The second is in reference
to "every incorporated company," other than railroad,
banking, building and loan and insurance companies,
now existing or hereafter organized under the laws of
this State. It is conceded that these general terms in-
clude corporations of the class to which the petitioner
belongs, but it is argued that they are restrained by the
general context and by the spirit of the law, and that
the act, when considered as a whole, indicates that the
legislature meant only business corporations, and in sup-
port of this position, attention is called to the fact that
in section 2 the corporation is required to report whether
it "is pursuing an active business under its charter," and
by section 7, when it desires re-instatement, it is required
to show, by affidavit, that at the time of its default it
was, and still is, "engaged in active business under its
charter," and it is said that corporations not for pecuni-
ary profit ordinarily are not engaged in active business,
whence the conclusion that the act was not intended to
apply to them. The term "active business," as used in
this statute, means the exercise of corporate powers,—
the doing of those things which the corporation is by its
charter authorized to do. We are confirmed in this view
of the meaning of these words by the fact that in sec-
tion 29 of chapter 32, persons desiring to organize a cor-
poration not for pecuniary profit are required to file with
the Secretary of State a certificate stating "the particu-
lar business and objects for which it is formed," and by
the succeeding section it is provided, "upon complying
with the foregoing conditions, the corporation, society

or association shall be deemed fully organized, and may proceed to business." It is apparent that the word "business," as used by the legislature in the statute of 1901 under consideration, refers not alone to those things which the corporation for pecuniary profit may do.

The constitutionality of the act is attacked upon the ground that the legislature has no power to dissolve a corporation or to declare a forfeiture of its franchise, nor has the legislature the power to prescribe a state of facts under which this may be done through an administrative officer, because such an act is the exercise of judicial power, which, under the constitutions of the State and of the United States, is vested in the judicial and denied, by implication, to the legislative department, and as petitioner was organized prior to the passage of the act of 1901, we are cited to the *Dartmouth College case*, and to other cases of like character, holding that a franchise of a corporation is property in the law, and is protected by the constitutions of the State and of the United States as a contract, which cannot be impaired by the legislature. The accuracy of petitioner's propositions, as abstract statements of the law, is beyond question, but we think them inapplicable here because based upon a misconstruction of the statute now before us. One of the purposes of the present statute evidently was to facilitate the taxation of corporations, and to provide information for the taxing officers in reference to the existence and location of corporations organized under the laws of the State and owning property in the State. The purpose of this statute further is to require evidence once each year that the corporation is exercising the powers granted, and its failure to make such proof is made *prima facie* evidence of non-user. The thing that works a forfeiture of the corporation is the fact of non-user, which can be finally determined only by a court of competent jurisdiction; (*Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310; *Baker* v. *Administrator of Backus*, 32 id. 79; *Board of*

*Education* v. *Bakewell*, 122 id. 339;) and the cancellation which the Secretary of State is required to enter upon the records of his office would, in such proceeding, make a *prima facie* case for the People. If the corporation is, in fact, engaged in active business and fails to make the report, it is not, by reason of that failure, deprived of its charter, but may, in a suit brought against it, show the fact and thereby defeat the proceeding. It is no doubt true, as suggested by petitioner, that if, with the records in the office of the Secretary of State in their present condition, petitioner desired a certified copy of the documents filed by its incorporators as a basis for its charter, such copy would show the cancellation contemplated by section 2 of the statute. This condition of affairs, and the fact that such entry on the record is a perpetual and continuing notice that its corporate powers are ended, misleading though such notice may be in some instances, are incentives of the most potent character for a compliance with section 2 of the act. The effect of the act is simply to make a failure to report, as required, *prima facie* evidence, and the clause providing that the failure to report and pay the fee therefor "shall be *prima facie* evidence that said corporation is out of business, and shall work a forfeiture of the charter of such corporation," was merely intended to be a statement of the effect of a condition, namely, non-user, of which condition the failure is made *prima facie* evidence.

It may be suggested that this construction of the statute places upon the corporation an additional burden,— one not contemplated by its charter, which is the contract between it and the State,—and that the statute is therefore obnoxious to the constitution for the reason that it impairs the obligation of a contract.

Petitioner is organized under the general Incorporation act, passed in 1872. Section 9 of that act provides: "The General Assembly shall, at all times, have power to prescribe such regulations and provisions as it may

deem advisable, which regulations and provisions shall be binding on any and all corporations formed under the provisions of this act: *And, provided, further*, that this act shall not be held to revive or extend any private charter or law heretofore granted or passed concerning any corporation." (Hurd's Stat. 1901, chap. 32, p. 455.)

In *City of Danville* v. *Danville Water Co.* 178 Ill. 299, we considered this section 9, and said in reference thereto (p. 306): "By organizing under the general Incorporation act, the defendant in error agreed to submit itself to and to be bound by such regulations and provisions. as the legislature should deem it advisable-to make.  *  *  * The language of section 9 is different from and broader in its scope than the language contained in many charters which reserve to the State the power to repeal, alter, amend or modify the charter itself. We apprehend, therefore, that the decisions restricting the power of the State as to charters which are given subject to the right of the State to repeal, alter, amend or modify them do not apply to such broad language as is used in section 9. By the terms of section 9 it is something more than the mere right to change the charter of the corporation which is reserved to the legislature. The authority is thereby reserved to provide the regulations and provisions under which the corporation may proceed in the transaction of its business. We have held that the legislature may impose duties on corporations the same as on individuals, in the absence of special enactments. We have also held that the constitution of 1848 by implication reserved to the legislature the right to change or increase the liability of a shareholder in a corporation.—*Illinois Central Railroad Co.* v. *City of Bloomington*, 76 Ill. 447; *Weidenger* v. *Spruance*, 101 id. 278; *Diversey* v. *Smith*, 103 id. 378; *Arenz* v. *Weir*, 89 id. 25; *Butler* v. *Walker*, 80 id. 345."

We think it apparent from the language just quoted that this statute of 1901, as we construe it, is within the terms of section 9, *supra*, which must be deemed to be a

part of the charter of every corporation organized under the act of 1872, and that while it is true that neither the legislature nor a ministerial officer can declare a forfeiture, still it is within the power of the legislature, under section 9, *supra*, to require corporations to make the reports required by section 2 of the act of 1901, and to provide that a record of their default, made by a ministerial officer, shall be *prima facie* evidence of non-user, and to authorize, *prima facie*, a forfeiture of the charter.

It is true that this statute makes that, viz., failure to report, evidence of non-user which before the passage of the statute would not have been proof on that subject at all; but this is not a valid constitutional objection.

"No man or corporation has a vested right in the rules of evidence. They pertain to the remedies provided by the State for its citizens and do not constitute a part of any contract. They are subject to control and modification by the legislature, whether affecting proof of existing rights or rights subsequently acquired. Changes in them may be made applicable to existing causes of action.—Cooley's Const. Lim. (6th ed.) p. 451; *Gage* v. *Caraher*, 125 Ill. 447." *Chicago, Burlington and Quincy Railroad Co.* v. *Jones*, 149 Ill. 361.

It is not, however, within the legislative power to declare what shall be conclusive evidence, as that would be an invasion of the power of the judiciary. 8 Cyc. p. 820; *Corbin* v. *Hill*, 21 Iowa, 70; *White* v. *Flynn*, 23 Ind. 46; *United States* v. *Klein*, 13 Wall. 128; *Missouri, Kansas and Texas Railway Co.* v. *Simonson*, 64 Kan. 802.

To give to this statute the meaning contended for by petitioner is to say that the purpose of the legislature was to make the failure to report conclusive evidence that a forfeiture has taken place, although the statute expressly says it shall be *prima facie* evidence, merely. This construction of petitioner finds support, it is true, in the fact that the statute provides that the failure to report shall work a forfeiture of the charter, thereby at-

tempting to give to the evidence, which it says is *prima facie*, the effect of evidence that is conclusive. The provisions of this statute are in that respect inconsistent with each other, and the meaning of the act must be determined by the construction placed thereon by the courts. To say that it merely provides what shall be *prima facie* evidence of non-user and for recording that evidence, is to uphold it; to say that the act of the Secretary of State which it directs absolutely forfeits the charter of the defaulting corporation, is to destroy it.

Where a statute may receive either of two constructions, one of which would result in its being upheld and the other of which would bring it within the inhibition of the constitution, that construction will be adopted by the courts which will avoid conflict with the constitution. *Newland* v. *Marsh*, 19 Ill. 376; *People* v. *Simon*, 176 id. 165.

It becomes our duty, therefore, to construe this statute, not as a law authorizing the Secretary of State to declare absolute forfeitures of the charters of defaulting corporations, but as merely establishing a new rule of evidence against these artificial persons.

The corporation which has defaulted in making this report can, within a year thereafter, have affirmative relief and clear the records in the office of the Secretary of State of the evidence against it by complying with section 7 of the act of 1901. What its right, if any, is to affirmative relief after the expiration of that year if it does not avail itself of the right given by that section, it is unnecessary now to determine.

The facts averred by the petition do not entitle the petitioner to the relief sought.                    *Writ denied.*

Mr. JUSTICE MAGRUDER, dissenting:

I do not concur in all of the opinion of the majority, as prepared by my brother SCOTT, and submit the following views:

*First*—In the petition for *mandamus* herein filed, the petitioner alleges that the act of March 10, 1901, when

properly construed, has no reference to corporations organized not for pecuniary profit, or to religious corporations. It is then alleged that the petitioning corporation herein is a corporation not for pecuniary profit, and, therefore, does not come within the purview and requirements of the act. This contention cannot be maintained. The act is broad enough in its terms to include all corporations, whether religious corporations, or corporations organized not for pecuniary profit, as well as corporations organized for pecuniary profit.

The first section of the act provides "that every corporation hereafter organized under the laws of this State shall  *  *  *  file with the Secretary of State a statement," etc. This language is broad enough to embrace every corporation organized under the laws of the State, and makes no distinction between those organized for pecuniary profit, and those organized not for pecuniary profit.

Again, section 2 provides that "every incorporated company, other than railroad, banking, building and loan and insurance companies, existing by virtue of any general or special law of this State, or hereafter organized by virtue of any law of this State, shall annually  *  *  * report to the Secretary of State." The language of this section is broad enough to embrace corporations organized not for pecuniary profit, as well as corporations organized for pecuniary profit. Every corporation, except railroad, banking, building and loan and insurance companies, is embraced within the requirements of the act. Consequently, the petitioner could not escape obedience to the requirements of the act upon the alleged ground that it is a corporation organized not for pecuniary profit. By reason of its character in this regard it is not taken out of the terms of the act.

It seems to be contended that corporations, organized not for pecuniary profit, are not embraced within the terms of the act, because the report, mentioned in sec-

tion 2, is required to state "whether or not the corporation is pursuing an active business under its charter and the kind of business engaged in, if any;" and because, in section 2, "a failure to make said report and pay said fee shall be *prima facie* evidence that said corporation is out of business," etc.; and because in section 7 it is provided "that any corporation, which is pursuing an active business under its charter, failing to make said report at the time provided by law may, * * * be re-instated," etc. It does not necessarily follow that the words, "active business" and "business," as here used, refer only to corporations organized for pecuniary profit. These words are not confined to corporations which do business for the purpose of making money, but refer to the carrying out of the objects of its charter by any corporation. When the corporation is required to report whether or not it is pursuing an active business under its charter, it is merely required to report whether or not it is a going concern, or is doing such acts as it is authorized to do, and for the doing which it was clothed with corporate existence. For instance, the petitioner alleges that its corporate object, as shown by its charter, is, among other things, "to alleviate the wants of the poor and needy; to visit and attend the sick; to rescue the victims of persecution; to provide for, protect and assist the widow and orphan," etc. The accomplishment of these ends, though they may be ends proposed to be accomplished by a corporation organized not for pecuniary profit, may require the employment of agents and the distribution and delivery of supplies. The carrying out of the charitable objects proposed by the charter might require the employment of such means and agencies as would constitute a business, though not a business pursued for pecuniary profit, and pursued only for the purpose of accomplishing such charitable ends. It cannot be said, therefore, that the broad language, used in section 1 and section 2 of the act, is so far limited and restricted by the subse-

quent use of the words, "active business," and "business," as to eliminate altogether from the purview of the act such corporations, like the petitioner, as are organized not for pecuniary profit.

Judicial notice is taken of the fact that section 2 of the act of March 10, 1901, was amended by an act approved May 13, 1903. (Sess. Laws of Ill. 1903, p. 123). By the latter act section 2 was amended by inserting after the words "insurance companies," the following words: "religious corporations and corporations not organized for pecuniary profit." Section 2, as thus amended, reads as follows: "Every incorporated company other than railroad, banking, building and loan and insurance companies, religious corporations and corporations not organized for pecuniary profit, existing by virtue of any general or special law of this State, or hereafter organized by virtue of any law of this State, shall annually, between the first day of February and the first day of March, report to the Secretary of State," etc. In other words, the amendment to section 2, takes religious corporations and corporations not organized for pecuniary profit, as well as railroad, banking, building and loan and insurance companies, out of the operation of the act of 1901. This amended act, however, has no effect upon the present suit, and does not bring it within the doctrine announced in the case of *Vance* v. *Rankin*, 194 Ill. 625, for the reason that the forfeiture and cancellation hereinbefore set forth were complete before the passage of the amended act; and the time has passed when, by the provisions of the act of 1901, the petitioning corporation can be re-instated. This being so, if the act of 1901 is a valid act, the forfeiture and cancellation complained of by the petitioner must stand. The act of 1901, before it was amended, and as amended, is not an act which gives a special remedy, but is an act which imposes a penalty. The penalty, having been incurred under the act of 1901 before amendment, cannot be remitted by the amendment

to the act passed in 1903. That amendment, by its terms, refers to future and not past action, as clearly appears from the words "every incorporated company, * * * shall annually * * * report to the Secretary of State," etc. The report to be made refers to future reports, that is to say, all reports made after the passage of the amendment in 1903. Whether or not, therefore, the petitioner is entitled to the writ of *mandamus* prayed for, depends upon the question whether the act of 1901 is a constitutional law.

*Second*—The petition further alleges that, even if the act of March 10, 1901, does include corporations organized not for pecuniary profit, yet that "it is unconstitutional and void, and is no warrant in law for the Secretary of State to cancel and forfeit petitioner's charter, or to demand money for its re-instatement." This allegation of the petition presents for consideration the constitutionality of the act of May 10, 1901. And the observations hereinafter made apply as well to the act as amended in 1903, as to the original act of 1901, that is to say, as well to the act since religious corporations and corporations not organized for pecuniary profit have been excluded from its operation as when they were included.

By the act in question the legislature requires every corporation in the State, with the exceptions specified, to make a report annually to the Secretary of State, and to pay to him a fee of one dollar, and makes the failure to make such report, and pay such fee, operate as a forfeiture of the charter of the corporation; and the Secretary of State is required, upon default by the corporation in making such report, to enter upon the records of his office the cancellation of the charter of the corporation so making such default.

Has the legislature the power to forfeit the charter of a corporation for failure to perform a specified act without any ascertainment of such failure by a judicial proceeding?

The charter of a corporation is an executed contract between the government and the corporators. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Coles* v. *Madison County*, Breese, 154; *Bush* v. *Shipman*, 4 Scam. 186). The legislature has no power to repeal, impair or alter such a contract against the consent of the corporation. (*Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310). The first clause of section 10 of article 1 of the constitution of the United States provides that "no State shall  *  *  *  pass any  *  *  *  law impairing the obligation of contracts." Section 14 of article 2 of the constitution of 1870 of Illinois provides that "no  *  *  *  law impairing the obligation of contracts ·  *  *  *  shall be passed."

A law which, like the one here under consideration, authorizes such a ministerial officer as the Secretary of State to enter upon the records of his office the cancellation of the charter of a corporation, without a judicial determination that such corporation has been guilty of some act, which authorizes a forfeiture of its charter, impairs the obligation of the contract between the State and the corporation, as embodied in its charter. (*Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310).

If, however, there could be any question as to the correctness of the proposition already stated, there can be no question as to the unconstitutionality of this act, for another reason. The fourteenth amendment to the constitution of the United States provides, among other things, as follows: "Nor shall any State deprive any person of life, liberty, or property without due process of law." Section 2 of article 2 of the constitution of 1870 of Illinois provides as follows: "No person shall be deprived of life, liberty, or property without due process of law." The franchises, granted to a corporation by the act of incorporation, are property. (*Regents* v. *Williams*, 9 Gill & Johns. 365; 31 Am. Dec. 97). Such franchises being property, they cannot be taken away from the corpo-

ration without due process of law. What is due process of law? The expression, "due process of law," means the same as the expression, "the law of the land." (Cooley's Const. Lim.—6th ed.—p. 430; *Burdick* v. *People,* 149 Ill. 600). "The law of the land" has been defined to be "the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society. Everything, which may pass under the form of an enactment, is not, therefore, to be considered the law of the land." (Cooley's Const. Lim.—6th ed.—p. 431).

In *Regents* v. *Williams,* 31 Am. Dec. 99, it was said: "By 'the law of the land' is meant, by the due course and process of the law."

In *Campbell* v. *Campbell,* 63 Ill. 462, we held that the words, "due process of law," in the clause of the constitution forbidding divestiture of title except by due process of law, "has reference to judicial proceedings according to the course and usage of the common law, and must always be based upon notice."

In *Board of Education* v. *Bakewell,* 122 Ill. 339, we quoted and adopted the definition of due process of law, as given by Mr. Justice Edwards in *Westervelt* v. *Gregg,* 12 N.Y. 209, which definition is as follows: "Due process of law undoubtedly means, in the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights. Such an act as the legislature may, in the uncontrolled exercise of its power, think fit to pass, is, in no sense, the process of law designated by the constitution." In the case of *Board of Education* v. *Bakewell, supra,* we said (p. 350): "To ascertain that a deed is conditional, that there has been a breach of condition, and to enforce forfeiture for the breach, are judicial functions, which it is not within the competency of legislative power to exercise. * * *

A private corporation, created by the legislature, may lose its franchises by a mis-user or a non-user of them, and they may be resumed by the government under a judicial judgment upon a *quo warranto* to ascertain and enforce a forfeiture.—*Terrett* v. *Taylor*, 9 Cranch, 51." In *Burdick* v. *People*, 149 Ill. 600, we said (p. 605): "The phrase, 'due process of law,' is the equivalent of the words, 'law of the land,' as used in Magna Charta, and means, 'in the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights.' (*Board of Education* v. *Bakewell*, 122 Ill. 339; *Rhinehart* v. *Schuyler*, 2 Gilm. 473; *Davidson* v. *New Orleans*, 96 U. S. 97; Cooley's Const. Lim.—5th ed.— marg. p. 356, top p. 435). An act of the legislature is not necessarily the 'law of the land.' A State cannot make anything 'due process of law' which, by its own legislation, it declares to be such. An act of the legislature, which transfers the property of one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his property without 'due process of law.'— *Davidson* v. *New Orleans, supra; Taylor* v. *Porter*, 4 Hill, 140; *Rohn* v. *Harris*, 130 Ill. 525; *Ervine's Appeal*, 16 Pa. St. 256; *Hoke* v. *Henderson*, 4 Dev. 1."

Inasmuch as "due process of law," or "the law of the land," are expressions, which have reference to judicial proceedings according to the course and usage of the common law, then an act of the legislature, which deprives a person or a corporation of property without providing for any judicial proceeding, is a violation of the constitution, because it is an attempt to confer judicial power upon the legislature.

Article 3 of the constitution of 1870 is as follows: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power

properly belonging to either of the others, except as hereinafter expressly directed or permitted." Section 1 of article 6 of the constitution of 1870 provides that "the judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns."

In *Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310, where this court had under consideration an act of the legislature, whose design appears to have been to repeal the charter of a railroad company, and to confer its property rights and franchises upon a different body of incorporators, we said (p. 312): "If, however, this act might be regarded as an effort to declare a forfeiture of the chartered rights of the company, then in existence, it is urged that it would violate the second article of our State constitution. The second section of that article divides the powers of government, and confers them upon three distinct bodies of magistracy; the legislative, the executive and the judiciary. The second section expressly prohibits any person, or collection of persons, being one of these departments, from exercising any power properly belonging to either of the others, and it declares all acts in violation of that section void. * * * We are informed by Mr. Justice Blackstone, in his Commentaries, that, amongst the different modes by which a corporation may be dissolved, is that of a forfeiture of its charter by negligence or abuse of its franchises. In such a case, the law judges that it has broken the condition, upon which it was incorporated, and thereupon it has become void. He also informs us that the regular course in such a case, to deprive the body of its powers, is to bring an information in the nature of a *quo warranto*, to inquire by what warrant its members exercise their corporate powers, having forfeited the charter by the acts complained of in the information. Another mode of

judicial proceeding is by *scire facias*, which, under some
circumstances, is the appropriate remedy to have the
forfeiture ascertained and declared. These are the reme-
dies in Great Britain, notwithstanding the parliament in
theory possesses the same power to declare a forfeiture
as the courts. Chancellor Kent, in his Commentaries,
(vol. 2, p. 305,) lays down the doctrine, that the legisla-
ture cannot repeal, impair or alter the rights and privi-
leges conferred by the charter, against the consent, and
without the default of the corporation judicially ascer-
tained and declared. * * * It is not doubted that the
legislature is prohibited, by the constitution, from exer-
cising the power of judicially determining and declaring
that a contract is forfeited, between individuals. And
no reason can be perceived, why it should be exercised,
when the State itself is a party to the agreement. The
power, in either case, is by the constitution devolved
upon the courts, and is consequently prohibited to the
legislative department. It then follows that this act, so
far as it may have been designed to declare a forfeiture
of the charter of the Great Western Railroad Company,
and to dissolve that body, is prohibited by the constitu-
tion, and is inoperative and void." So, here, the act of
May 10, 1901,—inasmuch as it makes the failure to file
a report and pay a fee of one dollar *prima facie* evidence
that the corporation is out of business, and makes such
failure operate as a forfeiture of the charter of the cor-
poration, and furthermore makes it the duty of the Sec-
retary of State, a mere ministerial officer, to enter upon
the records of his office, as soon as practicable after
default in making such report, the cancellation of the
charters of all corporations, failing to make such report
at the time and in the manner therein provided—is in
contravention of the constitution, and is inoperative
and void.

In *Regents* v. *Williams, supra,* the court had under con-
sideration an act of the legislature, which professed to

discontinue and abolish the corporation of the regents of a university, and to appoint a board of trustees, composed of different persons, under the corporate name of the trustees of the University of Maryland, and to transfer to the new corporation, thus attempted to be created, all the franchises and property of the corporation intended to be abolished; and it was held that this act, "if effectual, would amount to a legislative ouster; a legislative judgment of dissolution; an exercise of judicial power not warranted by the constitution; a sentence of ouster or of dissolution, being strictly a judicial act, for some imputed delinquency ascertained on proceedings at law instituted for that purpose, which, though assuming the garb of a law, the legislature, not being invested with a judicial power, is not competent to pass without the consent of the corporation." In the case of *Regents* v. *Williams, supra,* it was also said: "It cannot be denied that the franchises granted by the act of incorporation are vested rights, and can they be taken from the regents by any act of the legislature without impairing the obligation of the contract, that they shall be possessed and enjoyed by them and their successors in their corporate character? It is very clear that they cannot, and that no act of the legislature of the State can effect that object without the assent of the corporation, if the prohibitory clause of the tenth section of the first article of the constitution of the United States is applicable to such a contract as this; and no reason is perceived why it should not be held to apply as well to such contract as to any others, considering and treating this as a private corporation. * * * The legislature has no right, without the consent of a corporation, to revoke or alter its charter, or take from it any of its franchises or property; they are alike beyond the reach of legislative power here, and the high prerogative power of the crown of England, which may create, but cannot at pleasure dissolve a corporation, or without its consent alter or amend

its charter. * * * To say that the legislature pos-
sesses the power to pass capriciously or at pleasure a
valid act, taking from one his property and giving it to
another, would be in this age, and in this State, a star-
tling proposition, to which the assent of none could be
yielded; and yet there is nothing to forbid it, if it is once
conceded that they have power to dissolve one corpora-
tion, and take from it its franchises and property, with-
out its consent, and transfer them to another. * * *
The legislature, executive and judiciary, are all creatures
of the constitution, each confined in its action to the cir-
cumscribed sphere assigned to it, and cannot rightfully
exercise any power which is repugnant to that instru-
ment, or not within their respective spheres of action."

It cannot be said that the legislature would not have
power to require any corporation, created under the laws
of Illinois, to make such report as is required by this act.
In default of making such a report it might impose a fine,
and authorize the proper officers of the government to
institute a judicial proceeding in consequence of the vio-
lation of the statute. But to hold that the legislature
has the power to cancel the charter of the corporation,
and take away its corporate franchises, without a judi-
cial investigation of the question whether the corpora-
tion has been guilty of any act to justify a forfeiture of
its charter, would be to clothe the legislature with the
power, not only to impair the obligation of a contract,
but also to deprive the corporation of its property with-
out due process of law, and to confer upon the legislature
the power to exercise judicial functions.

Judge Cooley in his work on Constitutional Limita-
tions, (6th ed. p. 443) says: "A vested right of action is
property in the same sense in which tangible things are
property, and is equally protected against arbitrary in-
terference. Where it springs from contract, or from the
principles of the common law, it is not competent for the
legislature to take it away. And every man is entitled

to a certain remedy in the law for all wrongs against his person or his property, and cannot be compelled to buy justice, or to submit to conditions not imposed upon his fellows as a means of obtaining it. Nor can a party, by his misconduct, so forfeit a right that it may be taken from him without judicial proceedings, in which the forfeiture shall be declared in due form. Forfeitures of rights and property cannot be adjudged by legislative act, and confiscations without a judicial hearing after due notice would be void as not being due process of law." In the case at bar, the petitioner herein failed to make the report, and pay the fee, required by section 2 of the act of May 10, 1901. If this failure be regarded as "misconduct," it could not so far forfeit the right of the petitioner to be a corporation, that that right could be taken from it without judicial proceedings, declaring the forfeiture in due form. The legislature cannot declare a forfeiture of property by an act of its own, and, if this is so, it cannot confer the power to declare such forfeiture upon a ministerial officer, like the Secretary of State. All the authorities and text books, to which the briefs refer, announce this doctrine.

"The charter of a corporation cannot be forfeited for mis-use or abuse of charter powers, except by direct judicial proceedings." (12 Am. Dig.—Cent. ed.—p. 2422, and cases there cited).

Undoubtedly, under section 9 of the Illinois Corporation act, the General Assembly has power "to prescribe such regulations and provisions as it may deem advisable, which regulations and provisions shall be binding on any and all corporations formed under the provisions of this act," etc. (1 Starr & Curt. Ann. Stat.—2d ed.—p. 1006). But the power to prescribe regulations and provisions, which shall be binding upon a corporation, does not include the power to repeal its charter without a judicial proceeding; nor does that section of the act in regard to corporations confer any authority upon the

Secretary of State, under a state of facts created by the General Assembly, to cancel and forfeit the charters of corporations.

In Thompson's Commentaries on the Law of Corporations (vol. 5, sec. 6584) the doctrine is thus clearly announced: "Except where the power to repeal the charter of a corporation, or to revoke the franchises which it has conferred upon the co-adventurers, is expressly reserved, as already stated, it is not, in general, competent for the legislature of a State to dissolve a corporation, or to declare a forfeiture of any of its franchises. The reason is, that such an act is an exercise of judicial power, which, by all American constitutions, is vested in a separate body; which, consequently, is denied by implication to the legislature; and which, in some States, is denied to it in express terms. The franchises of a corporation are property; and, in view of this fact, there is no room for doubt upon the proposition, that an act of the legislature annulling the franchises of a corporation, where the power to do so has not been reserved so as to become a part of the contract embodied in the grant itself, would be a deprivation of property without due process of law, within the inhibition of the fourteenth amendment to the constitution of the United States." (Ibid. secs. 6608, 6700; *People* v. *Mallary*, 195 Ill. 582).

For the reasons above stated, it seems to me that the act of May 10, 1901, is unconstitutional.

Complaint is made that *mandamus* is not the proper remedy to secure the relief here sought. No objection is made as to the form of the present proceeding, nor as to the tribunal in which it has been begun. The reports are full of cases, where the question of the constitutionality of an act of the legislature has been determined in a proceeding by *mandamus*. (High on Ex. Legal Rem.—3d ed.—sec. 124a; *Giddings* v. *Blacker*, 93 Mich. 1; *People* v. *Thompson*, 155 Ill. 451; *People* v. *Hutchinson*, 172 id. 486; *Marbury* v. *Madison*, 1 Cranch, 149; *Ex parte Robinson*, 86

U. S. 505; *People* v. *Rose*, 167 Ill. 147; *People* v. *Van Cleave*, 187 id. 125; *People* v. *Van Cleave*, 183 id. 330).

Counsel for the respondent says that the legality, or rather the existence of a corporation, cannot be questioned in *mandamus*, but must be raised and determined by a direct proceeding in the nature of a *quo warranto* or a *scire facias*. The object here is not to determine the legality or the existence of a corporation. It is not denied that the petitioner herein was properly organized as a corporation. The question here is whether, under an act of the legislature, the Secretary of State has the power to cancel the charter of a corporation, already existing and legally organized. When a corporation is organized under the Corporation act of this State, the statement, which announces the purposes of the organization, is filed with the Secretary of State. The license to the commissioners to open books for subscription is issued by the Secretary of State. The report of the commissioners is filed in the office of the Secretary of State. The certificate of organization of the corporation is issued by the Secretary of State. This act itself, in section 7, authorizes the Secretary of State to re-instate a corporation, which has failed to make the report required by section 2, upon the records of his office upon the payment of a fee in the sum of $20.00 for such re-instatement and filing an affidavit, etc. The prayer of the petition for *mandamus* in this case is substantially a prayer, that the petitioning corporation be re-instated by the Secretary of State without the payment of the fee of $20.00. Involved in the re-instatement of the corporation necessarily is the cancellation of the forfeiture which has been placed upon the records. There can, therefore, be no objection to the prayer of the petition, which asks that the cancellation, which has been made under the provisions of section 2 be removed, or in other words, that the corporation be re-instated upon the records of the Secretary of State. (2 Spelling on Ext. Rem. sec. 1455, *et seq.; Ellis*

v. *County Comrs.* 2 Gray, 370; *People* v. *Matteson*, 17 Ill. 167; *People* v. *Brinkerhoff*, 68 N. Y. 259; *In re Bradley*, 7 Wall. 364).

I think that the writ of *mandamus* should be awarded in accordance with the prayer of the petition.