TURNER v. WESTERN HYDRO-ELECTRIC CO.

1. STATUTES—CONSTRUCTION—"VOID" USED AS AVOIDABLE.
   The word "void" is frequently used in statutes in the sense of avoidable.

2. CORPORATIONS—FAILURE TO PAY FEES—FORFEITURE OF CHARTER REQUIRES JUDICIAL PROCEEDING—STATUTES.
   The provision of Act No. 172, Pub. Acts 1923, amending Act No. 84, Pub. Acts 1921, providing for the forfeiture of a corporation's charter for failure to pay the fees therein provided for, is not self-executing, but requires a judicial proceeding to declare and enforce a forfeiture by the State.

[1]Statutes, 36 Cyc. p. 1125 (Anno); [2]Corporations, 14a C. J. § 3683.

3. SAME—SECRETARY OF STATE MAY NOT DECLARE FORFEITURE—
ACQUIESCENCE.

Where no judicial proceeding was brought against a cor-
poration to forfeit its charter for failure to pay the fees
provided by law (Act No. 172, Pub. Acts 1923, amending
Act No. 84, Pub. Acts 1921), there was no forfeiture, not-
withstanding the declaration of the secretary of State that
there had been a forfeiture and acquiescence therein by
the corporation's officers.

4. SAME—RIGHT TO CORPORATE PROPERTY.

Where a corporation was reincorporated because of a mis-
taken belief that its charter had been forfeited, the new
corporation is *held*, to have been functioning for the old
one, which still owns the corporate property and is en-
titled to conduct the corporate business.

5. SAME — FORFEITURE — SUIT FOR DISTRIBUTION OF ASSETS DIS-
MISSED WHERE CORPORATION STILL IN EXISTENCE.

A suit by a stockholder to wind up the affairs of a cor-
poration and to have its assets distributed among the stock-
holders, based on the theory that its charter had been for-
feited, is dismissed, and the corporation *held*, to be still
in existence and entitled to conduct its corporate business.

Appeal from Mecosta; Barton (Joseph)., J.    Sub-
mitted October 12, 1927.    (Docket No. 103.)    De-
cided December 1, 1927.

Bill by William F. Turner against the Western
Hydro-Electric Company and others to wind up the
affairs of the defendant company, for a distribution of
its assets, the appointment of a receiver, and an ac-
counting.    From a decree for plaintiff, defendants
appeal.    Reversed, and bill dismissed.

*Shelby B. Schurtz*, for plaintiff.

*Smith, Hunter & Spaulding, Knappen, Uhl & Bryant,*
and *Chapman & Cutler*, for defendants.

MCDONALD, J.    The plaintiff, who is a minority

---

[3]Corporations, 14a C. J. § 3684; [4]Id., 14a C. J. § 3602 (Anno);
[5]Id., 14a C. J. § 3891 (Anno).

stockholder in the defendant company, filed this bill to wind up its affairs, to have its assets distributed among the stockholders, to have a receiver appointed and an accounting from certain of its officers who have been in active management and control of the company's business. The theory of the bill is that the charter of the corporation was annulled by forfeiture on December 21, 1923, for failure to comply with the corporation tax law; that, on the happening of that event, the title to the corporate property became vested in the stockholders as tenants in common and that as one of the stockholders the plaintiff is entitled, in this suit, to have the affairs of the company wound up and the assets divided among the stockholders as their interests may appear.

The Western Hydro-Electric Company was incorporated August 30, 1909, under Act No. 232, Pub. Acts 1903 (2 Comp. Laws 1915, § 9017 *et seq.*), for the purpose of conducting a general electric light and power business in the counties of Mecosta and Montcalm. In 1921, a controversy arose between the corporation and the secretary of State over the amount of the privilege fee which it was required to pay for that year. The corporation submitted its report with an inclosure of $52, of which $2 was stated to be in payment of the filing fee and $50 for the privilege fee. The secretary of State computed the fee at $1,750 and demanded payment of that amount. It was not paid. In 1922, the corporation again submitted its annual report and paid the filing fee of $2 and a privilege fee of $50. On this report, the secretary of State computed the fee to be $366.10, but stated that he could not accept the report because of the default in the payment of the fee for 1921. No further reports were filed or payments tendered by the corporation; and on November 21, 1923, the secretary of State, of his own motion, granted an extension of 30 days in which to file proper reports and to pay the

fees demanded.    In his letter to the defendant cor-
poration he said:

"In case you fail within the limit of time, we will
be obliged to consider your charter void and mark your
company 'out' in our files."

The request was not complied with and the com-
pany was marked "out" in the secretary of State's
files on the 21st of December, 1923.

In March, 1926, Mr. James E. Tobin, secretary and
general manager of the corporation, and Mr. Dutcher,
an accountant, went to Lansing to arrange some settle-
ment of the disputed tax items.    It was then con-
ceded by the secretary of State that his computation
of the fee for 1921 was erroneous to the amount of
$1,384.25.    The assessment as corrected was paid by
Mr. Tobin.    He was then advised by the secretary of
State that the company's charter had been forfeited
and that it would be necessary to file new articles of
incorporation.    The reincorporation was undertaken
by Mr. Tobin without counsel other than the secretary
of State and without authorization by the corporation.
When the matter of the reorganization was presented
to the public utilities commission, an order was made
which read in part as follows:

"After the filing of said articles of association, as
above provided, applicants are hereby authorized to
issue twenty-six thousand one hundred twenty-five
(26,125) shares of no-par value capital stock, and to
exchange the same for the property owned by the
persons formerly constituting the Western Hydro-
Electric Company, a corporation whose charter has
been forfeited, in the ratio that the amount of stock
of said corporation whose charter has been forfeited
held by each individual stockholder bears to the whole
amount of outstanding capital stock of said corporation
whose charter has been forfeited, it being the object
and intention of this corporation to acquire all of the
property formerly held by said Western Hydro-Electric
Company whose corporate existence has expired and

whose corporate charter has been declared forfeited, said property to be acquired subject to the outstanding liens thereon and the indebtedness against the same."

No conveyances to the reorganized company were made. The plaintiff, who owned 85 shares in the old company, refused to exchange them for stock in the new company. The incorporation into a new company of the same name was apparently carried on in good faith in the belief that such action was necessary to reinstate the company which had become in default for failure to pay the tax required by the secretary of State. On the hearing, the circuit judge entered a decree in which the plaintiff was granted all of the relief prayed for. The defendants have appealed.

The controlling question presented by the record is whether the charter of the defendant company was forfeited by the action of the secretary of State in December, 1923. The plaintiff's claim of right to have the affairs of the corporation wound up and its assets distributed is based entirely on the alleged forfeiture for failure to pay the required fee. It follows that, if there were no forfeiture, he is not entitled to the relief sought.

The law in force at the time of the corporation's default in 1921 and 1922 provided the following penalty for failure to report and pay the required fees:

"In case any corporation required to file the report and pay the fee or fees prescribed in this act shall fail or neglect to make such report within the period required by law, such corporation shall, in addition to its liability for such privilege fee and interest thereon, be subject to a penalty of one hundred dollars, and an additional penalty of five dollars for each day's continuance of such failure or neglect, which penalty or penalties shall be collected in an action to be instituted by the attorney general of this State as prescribed by law; and it shall be the duty of the secretary of State to report to the attorney general every case

of such failure or neglect promptly." Act No. 85, Pub. Acts 1921, § 10 (Comp. Laws Supp. 1922, § 11361 [12]).

The legislature of 1923, in Act No. 172, added a section to chapter 2, pt. 5, of Act No. 84, Pub. Acts 1921, to stand as section 7. This section provides, in part, that, if a corporation shall neglect or refuse to file the required report and pay the fee, "the charter of such corporation shall be void, unless the secretary of State shall, for good cause shown, extend the time for the filing of such report or the payment of such fee," etc.

The defendants have attacked the constitutionality of this provision of Act No. 172 on various grounds which we do not deem it necessary to discuss; for, assuming that the act is valid and applies to the corporation's default in 1921 and 1922, it is not self-executing, but requires a judicial proceeding to declare and enforce a forfeiture by the State.

"The secretary of State cannot forfeit a charter, even though the statute prescribes forfeiture for non-payment of taxes; but it is constitutional to provide by statute, as is the case in New Jersey and some other States, that the charter and all corporate powers shall be void and cease upon the nonpayment of taxes." Cook's Principles of Corporation Law, p. 708.

"A statute, that after a year's suspension of business the franchises shall be deemed surrendered and the corporation be adjudged dissolved, is not self-executory, but requires the judgment of the court." 3 Cook on Corporations (8th Ed.), p. 2361, § 638.

"Frequently a charter of a railroad corporation requires it to complete its road or a certain number of miles of road within a certain time, and the charter expressly declares that for the failure to comply with this requisite the corporate powers and existence shall cease. There is a strong line of decisions to the effect that such a provision as this forfeits the charter absolutely upon noncompliance, and that no decree of a

court is necessary to effectuate that forfeiture. But this drastic and dangerous construction of charters does not commend itself to law and justice. It adds one more to the perils which are attached to all great corporate enterprises. Even in New York, where the above doctrine seems to have had its origin, the courts are inclined to limit its application. The New York courts have held that a provision in a charter, that unless certain things are done within a certain time the company shall forfeit the rights acquired, does not work a forfeiture *ipso facto*, and that a provision in a charter, that unless work shall be commenced within two years 'all rights and privileges granted hereby shall be null and void,' is not self-executing, and a judgment of the court is necessary before forfeiture takes place, and the weight of authority, as well as logic and public policy, favors such a rule." 3 Cook on Corporations (8th ed.), p. 2356, § 638).

In Illinois, the statute provides that a failure to make a report and pay the fee "shall be *prima facie* evidence that said corporation is out of business, and shall work a forfeiture of the charter of such corporation;" and that the secretary of State shall enter the cancellation of the charter of such corporation upon his record. In *People* v. *Rose*, 207 Ill. 352 (69 N. E. 762), this statute was construed and it was held that it was not self-executing but that the fact of forfeiture must be determined "only by a court of competent jurisdiction."

In South Carolina, a statute incorporating a railroad company provided that "all powers, rights, privileges, and immunities hereby granted shall cease, determine, and be void," unless certain things are done by the company in a certain time. In a suit to declare a forfeiture, it was held that a failure to perform the conditions required by the statute did not *ipso facto* dissolve the corporation but that "the franchise remains in force until the forfeiture is declared in a direct judicial proceeding brought by the State against the corporation for that purpose."

*State, ex rel. Spartanburg City Council,* v. *Railroad Co.,* 51 S. C. 129 (28 S. E. 145).

In *Ohio National Bank of Washington* v. *Construction Co.,* 17 App. D. C. 524, it was claimed that the defendant corporation had forfeited its charter for failure to pay an annual license tax.   The statute provided that, "Any such corporation, which shall fail to pay this tax, shall, because of such failure, forfeit its charter to the State."   In holding that the charter had not been forfeited, the court said:

"Under the decisions of the courts of West Virginia, which may well be taken as a guide in this regard, and which are in accord with the general tenor of judicial decisions on this point, a charter of incorporation is not *ipso facto* abrogated or annulled by failure to pay a license tax, notwithstanding that the statute may provide that such failure may work a forfeiture.   Such failure, of course, will afford ground for legal proceedings to vacate a charter; but it requires a legal proceeding, by way of *quo warranto* or other equivalent process, to vacate a charter of corporation.   Mere proclamation by an executive officer will not accomplish the result."

A similar rule is announced in *Murphy* v. *Wheatley,* 102 Md. 501 (63 Atl. 62) ; *Greenbrier Lumber Co.* v. *Ward,* 30 W. Va. 43 (3 S. E. 227) ; *Atchafalaya Bank* v. *Dawson,* 13 La. 497; *Vermont & Canada R. Co.* v. *Vermont Cent. R. Co.,* 34 Vt. 1; *New York, etc., Bridge Co.* v. *Smith,* 148 N. Y. 540 (42 N. E. 1088) ; *Briggs* v. *Cape Cod Ship Canal Co.,* 137 Mass. 71; *Brown* v. *Railway Co.,* 68 Ark. 134 (56 S. W. 862) ; *Cluthe* v. *Railway Co.,* 176 Ind. 162 (95 N. E. 543, Ann. Cas. 1914A, 935) ; 7 R. C. L. p. 725, § 732; 14A C. J. pp. 1094, 1095.

In some of these cases it was held that the legislature might rightfully provide that, for a breach of a subsequent condition, such as a failure to pay a corporation tax, its charter should be *ipso facto* forfeited without any judicial proceeding; that it was

a question of legislative intent, but that the intent to so terminate the charter must be very plainly expressed in the statute.   If we should adopt this rule in determining the question in the instant case, an examination of our statute will show that the legislature did not intend that for failure to pay the corporation fee the corporate charter should be *ipso facto* terminated.   It provides that for such failure the charter of the corporation shall be "void."   The word "void" is frequently used in statutes in the sense of avoidable.   In *New York, etc., Bridge Co.* v. *Smith, supra,* it was said:

"It cannot be said that the words 'shall be null and void' disclose the legislative intent to make this clause self-executing.   The words 'null and void,' as used in this connection, clearly mean voidable."

Our attention has not been called to any case where this question has been considered heretofore by this court.   In examining cases in other jurisdictions we are impressed with the justice of the rule which in these circumstances requires a judicial inquiry to determine the fact of forfeiture.   As was said by Mr. Cook, "the weight of authority, as well as logic and public policy, favors such a rule."

It is our conclusion in the instant case that the failure of the corporation to pay the 1921 and 1922 fees, though such failure was in part due to the erroneous demands of the secretary of State, was a cause for forfeiture which could only be enforced in a judicial proceeding by the State brought for that purpose. As no such proceedings were taken, the charter was not forfeited.   The reincorporation was a mistake, but we are satisfied that such action, though unnecessary and unauthorized, was taken by Mr. Tobin with an honest purpose and in the belief that he was acting for the best interests of the old corporation.   No one has been injured.   The new company has been in

charge of the corporate business and appears to have been operating it successfully. In view of the facts and circumstances, this new corporation must be held to have been functioning for the old one. The old corporation still owns the corporate property and is entitled to conduct the corporate business. It should forthwith call a meeting pursuant to its charter and by-laws and elect a board of directors who shall have the charge and management of the property and affairs of the corporation.

We have said that there was no forfeiture of this company's charter. As no other cause of relief is relied on by the plaintiff, it is not necessary to consider the case further. His bill should be dismissed. It is dismissed, with costs to the defendants. A decree will be entered in accordance with this opinion.

SHARPE, C. J., and BIRD, FLANNIGAN, FELLOWS, WIEST, and CLARK, JJ., concurred.

The late Justice SNOW took no part in this decision.