R. A. GRAY, as Secretary of State for the State of Florida, *Appellant*, vs. CENTRAL FLORIDA LUMBER COMPANY, a corporation, *Appellee*.

140 So. 320.

141 So. 604.

Division B.

Opinion filed March 15, 1932.

Petition for rehearing denied May 11, 1932.

448

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, for Appellant;

*Baker & Baker* and *Martin Sack,* for Appellee.

TERRELL, J.—The legislature of 1931 enacted Chapter 14677, Laws of Florida, requiring all corporations authorized to do business in this state to file annual reports with the Secretary of State and to pay a tax in the nature of a filing fee thereon. Chapter 14677, Acts of 1931, was amended by Chapter 15726, Acts of 1931, but said amendments are not material to this case.

In October, 1931, Appellee filed its bill of complaint in the Circuit Court of Leon County seeking to restrain the enforcement of Chapter 14677 because of alleged violations of the Constitution of the United States and the

Constitution of the State of Florida. This appeal is from an interlocutory decree overruling the motion of appellant who was defendant below, to dismiss the bill of complaint.

It is first contended that the title to Chapter 14677 is violative of Section Sixteen of Article Three of the Constitution of Florida.

The pertinent part of the title to Chapter 14677, Acts of 1931, is as follows:

"An Act Requiring Corporations Authorized to do Business in the State of Florida, both Foreign and Domestic, Annually to File with the Secretary of State Certain Reports and to Pay a Certain Tax in the Nature of Filing Fee thereon ..................."

The pertinent part of Section Sixteen of Article Three of the Constitution of Florida is as follows:

"Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; ....................."

Appellee contends that the words "a certain tax" as used in the title are limited and modified by the words "in the nature of a filing fee thereon" and that consequently the title is more restrictive than the body of the act in that the words of limitation imply that a tax for administrative purposes only is imposed while the body of the act seeks to impose a tax for revenue as well as administration.

The purpose of Section Sixteen of Article Three of the Constitution is to require that the title to all acts be of such specifications as to put the legislature and the public on notice of the nature of the proposed act. Smith vs. Chase, 91 Fla. 1044, 109 So. 94. When the title to an act expresses its contents with sufficient certainty to give reasonable notice thereof, it may not be an index to the act but if it reasonably leads to inquiry as to its

provisions, it is sufficient. Lainhart vs. Catts, 73 Fla. 735, 75 So. 47; Fine vs. Moran, 74 Fla. 417, 77 So. 533; Johns v. State, 93 Fla. 603, 112 So. 556; Bannerman vs. Catts, 80 Fla. 170, 85 So. 336; State ex rel. Terry vs. Vestel, 81 Fla. 625, 88 So. 477. When the title fairly covers the subject of the act and is not misleading, courts will not, because of alleged defective title, refuse to give effect to any matter contained in the act that is germane to or properly connected with the subject matter of it. Ex parte Gilletti, 70 Fla. 442, 70 So. 446; State v. Bethea, 61 Fla. 60, 55 So. 550. When the subject of the body of an act is less comprehensive than, but is included in the subject stated in the title, the requirement that a law shall embrace but one subject to be expressed in the title, is not violated if the title is not misleading. Seaboard Air Line Ry. vs. Simon, 56 Fla. 545, 47 So. 1001. Unnecessary matter in the title to an act that is not misleading will not violate it or subject it to the criticism of having two distinct subjects. State ex rel. Moddie vs. Bryan, 50 Fla. 293, 39 So. 929. State ex rel. Taylor vs. City of Jacksonville, 101 Fla. 1241, 133 So. 114.

One challenging the constitutional validity of an act of the legislature is confronted with these canons of statutory construction: (1) On its face every act of the legislature is presumed to be constitutional; (2) Every doubt as to its constitutionality must be resolved in its favor; (3) If the act admits of two interpretations, one of which would lead to its constitutionality and the other to its unconstitutionality, the former rather than the latter must be adopted; (4) The constitutionality of a statute should be determined by its practical operation and effect; (5) In determining its constitutional validity, courts should be guided by its substance and manner of operation rather than the form in which the act is cast; and (6) After indulging all presumptions in favor of the act, if it is found to be in positive conflict with some

provision of organic law, it becomes the duty of the court to strike it down.

The vice of constitutional invalidity must inhere in the very terms of the title or body of the act. If this cannot be made to appear from argument deduced from its terms or from matters of which the court can take judicial knowledge, we will not go beyond the face of the act to seek grounds for holding it invalid. A safe guide to determine the validity of a taxing statute is an inquiry into contemporary conditions, political, industrial, and social, of the community at whose suggestion the statute was promulgated, 1 Cooley's Constitutional Limitations (8th Ed.) 376, note 3; DeCamp vs. Eveland, 19 Barb. (N. Y.) 81; Lusher vs. Scites, 4 W. Va. 11; Hovey vs. Foster, 118 Ind. 502, 21 N. E. 89; People ex rel. Kemmler vs. Durston, 119 N. Y. 569, 24 N. E. 6. Constitutional interpretation is one of our most inveterate reasoning processes. It is indigenous to our political institutions and does not rest on individual leanings neither can it rest on psychic antipathy to or affinity for the rule of social, economic or political conduct involved in the act challenged.

In delineating titles to taxing statutes, the legislature is accorded a wide discretion. The language employed should be construed liberally, never narrowly or technically. Courts adhere rigidly to this rule and to do so will disregard verbal inaccuracies and resolve all reasonable doubts in favor of the act. To warrant condemnation of legislative enactments for failure to comply with this rule, the violation must be substantial and plain. Jerome H. Sheip Co. vs. Amos, 100 Fla. 863, 130 So. 699, and Florida cases there cited.

We think the title to Chapter 14677, Acts of 1931, is in full accord with Section Sixteen of Article Three of the Constitution of Florida. The words ''in the nature of a filing fee thereon'', were superfluous and add nothing to

the title but they are not deceptive or misleading if considered with the full title. The phrase, "a certain tax", is ample notice to lead anyone to inquire into the body of the act and the announcement that said tax is like or partakes of the nature of a filing fee in no sense qualifies its size or proportions. As a matter of fact, by the terms of the act, the amount of the "filing fee" imposed varies as widely as does the "filing fee" imposed under the terms of another act (Section 328 Revised General Statutes of 1920, Section 385 Compiled General Laws of 1927) on candidates for nomination to office in primary elections. The title is comprehensive, is an index to, and fairly covers the contents of the act. It is admitted by appellant and appellee that the taxing power may be exerted for regulation, for revenue, or for both in the same act. Gundling vs. City of Chicago, 177 U. S. 183, 20 Sup. Ct. Rep. 633; Jerome H. Sheip Co. vs. Amos, 100 Fla. 863, 130 So. 699.

It is next contended that the classification of corporations for purposes of taxation into corporations of par value stock and corporations of no par value stock under sections two and twelve of Chapter 14677, Acts of 1931, is arbitrary, unreasonable, and discriminatory and has no relation to the purpose of the act and is therefore violative of the Fourteenth Amendment to the Federal Constitution and Sections one and twelve of the Declaration of Rights, Constitution of Florida.

Section two of Chapter 14677, Acts of 1931, provides a schedule of excise taxes in the nature of filing fees ranging from ten to one thousand dollars, determined by the par value of the shares of stock outstanding. Section twelve of Chapter 14677 provides that in the event the shares of stock outstanding of any corporation should be classed as no par value, then for the purpose of the act each share shall be deemed or presumed to have a value of at least one hundred dollars per share, which

presumption may be overcome by actual proof submitted to the Secretary of State. For the purpose of the act, the Secretary of State is authorized to make such investigation as he may consider necessary and increase or decrease the value of no par value stock as he may determine to be correct from the proof submitted.

Our statutes (Sections 6529 and 6535 et seq., Compiled General Laws of 1920, Sections 3 and 9 et seq. of Chapter 10096, Acts of 1925) authorize no par stock and stock having par value and provide for their amount, issuance, transfer, liability of the holders, and other characteristics, some of which may be determined by the corporation issuing the stock while others are determined by the statute. Capital stock as employed in acts of incorporation does not indicate the value of the assets of the corporation. It designates in theory at least the amount of capital required to be contributed by the stockholders for the purposes of the corporation. The value of the corporate assets may be increased by earnings or decreased by losses but the capital stock remains static unless changed by legislative authority. Par value may or may not coincide with market value. The former being an arbitrary designation fixed by the corporation while the latter fluctuates with the assets of the corporation. It would not be practicable to predicate an excise tax on the market value of capital stock nor on the authorized capital stock unless some arbitrary value be given the no par stock.

But these considerations are beside the main question presented. It is contended that Chapter 14677 is discriminatory and unreasonable because in effect, it requires a filing fee of corporations of par value stock on the basis of the par value of their stock while corporations with no par value stock are permitted to show the actual value of their stock as a basis for the filing fee to be assessed against them. This argument leaves out

of account the nature of the tax and the essential differences between the two classes of stock.

The tax is imposed as a franchise tax on corporations authorized to transact business in this state. It is not a property tax imposed on the stock or other assets of the corporation. It is a tax on the corporate franchise which includes the privilege whether exercised or not, of issuing and using when issued both "par value" and "no par value stock". The privilege to issue in either case bears no necessary relation to the value of the stock or the assets of the corporation and the tax is imposed without reference to either. Roberts & Sc. Co. vs. Emerson, 271 U. S. 50, text 55, 46 Sup. Ct. Rep. 375, 70 L. Ed. 827; Flint vs. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. Rep. 342; Clay Products vs. United States, 52 Fed. (2nd) 1033; Lee vs. State Tax Commissioner et al. (Ala.) 123 So. 6.

We are therefore concerned with the question of whether or not there is such a difference between the privilege to issue "par value stock" and "no par value stock" as to constitute a basis for the classification complained of for purposes of taxation, so that the tax in the first case may be based on the price of the stock as issued and in the second case, on the maximum price at which it may be issued or shown to be worth.

Sections 6536 and 6537, Compiled General Laws of 1927 (Sections 10 and 11, Chapter 10096, Acts of 1925, Laws of Florida) detail the considerations for issuing the two classes of stock. This class of legislation seems to be general throughout the country and a casual examination of it discloses practical and very important differences between the two classes of stock. The time of issue, conditions of issue and sale, manner of distribution of profits and liability of holders of each class of stock for the debts of the corporation may be different. As to legal incidents and practical application of the two kinds

of stock, these differences afford ample basis for classification of them for purposes of taxation. Roberts & Schaefer Co. vs. Emerson, 313 Ill. 137, 144 N. E. 818. Affirmed in 271 U. S. 50, is in point and conclusive of this question. Clay Products Company vs. U. S., 52 Fed. (2nd) 1033; Lee vs. State Tax Commission et al. (Ala.) 123 So. 6.

Corporations of par value stock afford a ready unit for admeasurement of the excise. Corporations of no par value stock do not offer such a ready unit as a basis of computation but in fairness to others some excise must be exacted from them. By Section Twelve of Chapter 14677, Acts of 1931, the legislature promulgated a rule to the effect that the capital stock of no par value corporations would be presumed to have a value of at least one hundred dollars per share. There is provision in the rule to rebut or qualify this presumption but that is immaterial as the rule would be upheld without the qualifying provision and the value of which may be fixed by the Secretary of State bears no relation to the excise. Roberts vs. Emerson, supra; American Uniform Co. Inc. vs. Commonwealth, supra. But we are not concerned with the provision to rebut or qualify the statutory presumption in this case. The appellee is not a corporation of no par value stock, but is admittedly a corporation having only par value stock. There is no showing in the bill of complaint that the Secretary of State has followed, or that he intends to follow, the authority given him to increase or decrease the presumptive value or no par value shares and if he exercises no authority under such power, it is plain that corporations having no par value shares will not be taxed at a different rate from those having only par value shares. Section 10 provides that if any part of the Act is found to be invalid, it may be eliminated and the remainder allowed to stand and be enforced. If the provision of Section 12 authorizing the Secretary of State

to increase or decrease the presumptive value of no par value shares is unconstitutional for any reason, said provision under section ten may be regarded as eliminated, without impairing the remainder of the act. But the complainant having only par value stock has not and cannot raise that question. As against the complaint made in this case, that question not being properly before us, we leave open and decline to express any view in regard to the constitutional validity of that part of section 12 authorizing the Secretary of State to increase or decrease the presumptive value of no par value stock. The general rule so promulgated measures the excise on par value and no par value corporations in a reasonable manner. It is grounded on experience and is an approximation to equality and works no disparity between the two classes of corporations. The maximum imposed is reasonable and affects all corporations alike.

In the imposition of an excise tax, the rule of equality and uniformity as guaranteed by Article Nine of the Constitution is not involved. Excise taxes have been imposed in many ways but so long as they are reasonable, not unjustly discriminatory, nor arbitrary, whimsical, irrational, grossly oppressive, plainly unequal or contrary to common right, they will be upheld. State ex rel. Bonsteel vs. Allen, 83 Fla. 214, 91 So. 104; Jackson vs. Neff, 64 Fla. 326, 60 So. 350; Peninsular Casualty Co. vs. State, 68 Fla. 411, 67 So. 165; Amos vs. Gunn, 84 Fla. 285, 94 So. 615; Amos vs. Matthews, 99 Fla. 1, 126 So. 308; Jerome H. Sheip Co. vs. Amos, supra.

Perfect equality in the operation of laws imposing a tax on real estate is recognized as impossible. It is even more difficult to arrive at uniformity in the operation of an excise tax, but mere inequality or lack of uniformity in its operation is no bar to its enforcement. It must be so arbitrary and oppressive as to clearly amount to a denial of due process or of equal protection and where,

as here, the public health and safety are not involved, the ultimate test is whether or not the excise so imposed is so arbitrary and oppressive as to prohibit a great number, if not all, persons from pursuing occupations otherwise lawful. Jerome H. Sheip Co. vs. Amos, supra; American Uniform Co. vs. Commonwealth, 237 Mass. 42, 129 N. E. 622.

It is generally recognized that in the application of an excise tax, some objects of taxation will bear the burden while others will be relieved of it, one business will be selected while another will be omitted and one class of property will be taxed while another will go tax free. This fact, however, or the fact that it bears more heavily on one person or corporation than on another, does not vitiate the excise. Clay Products Co. vs. United States, supra.

Under this treatment, the question of classification is invulnerable to the attack made on it. The power of the state to classify for purposes of taxation is of wide range and flexibility, provided that the classification must be reasonable, not arbitrary, and rests on some ground of difference having a fair and substantial relation to the object of the legislature. All persons similarly circumstanced should be treated alike, though the state is not required to resort to close distinction or to maintain a precise scientific uniformity with reference to composition, use or value. To so hold would subject the taxing power of the state to an "intolerable supervision, hostile to the basic principles of our government, and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure." Louisville Gas and E. Co. vs. Coleman, 277 U. S. 32, 48 Sup. Ct. Rep. 423, 72 L. Ed. 770, text 774. Ohio Oil Co. vs. Conway, 281 U. S. 146, 50 Sup. Ct. Rep. 310, 74 L. Ed. 775; Metropolis Theatre Co. vs. City of Chicago, 228 U. S. 61, 33 Sup. Ct. Rep. 441, 57 L. Ed. 730.

It is finally contended that section five of Chapter 14677, Acts of 1931, is in conflict with Section Four of the Declaration of Rights, Constitution of Florida.

Section Four, Declaration of Rights, Constitution of Florida, provides:

"All courts in the state shall be open, so that every person for any injury done him in his lands, goods, person, or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial, or delay."

Section five of Chapter 14677, Acts of 1931, provides that any corporation failing to comply with the provisions of this act for six months shall forfeit its corporate and charter privileges and shall not be permitted to maintain any action in any court in this state until such reports are filed and all fees due thereunder paid.

A franchise to transact business in this state by either a domestic or foreign corporation is a privilege which may be granted or withheld as the state deems proper. This premise established, it necessarily follows that such a franchise may be granted on such terms as the sovereignty may prescribe so long as not in conflict with the Constitution. The act brought in question does not attempt to deprive a corporation of its franchise for failure to comply with its terms but it makes the payment of its filing fee a prerequisite to transact business and punishes it by withholding all its charter privileges if not paid in six months. This is a reasonable regulation not near so harsh as that imposed in other states for a like delinquency.

Whether or not such a regulation is in violation of Section Four of the Declaration of Rights, is one of first impression in this court but it has frequently been adjudicated by other courts in this country. In come jurisdictions, the statutes work a dissolution of the corporation on failure to pay the excise and are self-executing, while

in other jurisdictions, the statutes require a judicial inquiry to adjudicate the fact of forfeiture but in either event, such statutes have been held to be constitutional, notwithstanding organic provisions similar to that interposed in the instant case. When statutes have gone so far as to declare a forfeiture and dissolution of the charter and all corporate privileges for failure to pay the required excises, the weight of authority supports the rule requiring a judicial inquiry to determine the fact of forfeiture. Bunn vs. City of Laredo (Tex. Civ. App.) 213 S. W. 320; Ferguson Fruit and Land Co. vs. Goodding, 44 Idaho 76, 258 Pac. 557; Farmers' State Bank of Richardton vs. Brown, 52 N. D. 806, 204 N. W. 673; Peck vs. Linney, 97 Wash. 103, 165 Pac. 1080; State ex rel. New Arlington Hotel Company vs. Hinkle, 115 Wash. 298, 197 Pac. 4; Murphy vs. Wheatley, 102 Md. 501, 63 Atl. 62; Klamath Lumber Co. vs. Bamber, 74 Ore. 287, 142 Pac. 359, 145 Pac. 650; Van Landingham vs. United Tuna Packers, 189 Cal. 353, 208 Pac. 973; Siegel vs. Maryland Casualty Co., 178 N. Y. S. 391; People vs. Rose, 207 Ill. 352, 69 N. E. 762; Turner vs. Western Hydro-Electric Co., 241 Mich. 6, 216 N. W. 476; Section 5443, Vol. 8, Fletcher's Cyc. of Corporations and Section 5443 of the 1924 Supplement to the last named author. 3 Cook on Corporations (8th Ed.) 2356. Our statute does not declare a forfeiture but merely suspends the charter privileges until the tax is paid.

Finding no constitutional objection to the act assaulted, the decree of chancellor is reversed.

Reversed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BUFORD, C.J., concurs in the opinion and judgment.

ELLIS, J., dissents.

## ON PETITION FOR REHEARING.

TERRELL, J.—All the questions raised in this petition for rehearing were fully covered in the main opinion except the first which is in effect that Chapter 14677, Acts of 1931, Laws of Florida, contravenes the equal protection clause of the Fourteenth Amendment to the Federal Constitution and Sections One and Twelve of the Declaration of Rights, Constitution of Florida, because it required appellee to file annual reports while corporations paying a filing fee of One Thousand Dollars are exempt from making any reports whatever.

In Assaria State Bank vs. Dolley, 219 U. S. 121, 55 L. Ed. 123, 31 Sup. Ct. Rep. 189, the Supreme Court upheld a classification predicated solely on volume of surplus as required between incorporated and unincorporated banks. The same court has frequently upheld statutes directed at an evil as it actually exists in the contemplation of the Legislature without attempting to cover the whole field of possible abuse. Patsone vs. Commonwealth of Pennsylvania, 232 U. S. 138, 58 L. Ed. 539, 34 Sup. Ct. Rep. 281; Keokee Consolidated Coke Co. v. Taylor, 234 U. S. 224, 58 L. Ed. 1288, 34 Sup. Ct. Rep. 856; Griffith v. State of Connecticut, 218 U. S. 563, 54 L. Ed. 1151, 31 Sup. Ct. Rep. 132.

It is also conclusively settled by frequent decisions of the same court that, subject to certain limitations as respects interstate and foreign commerce, a state may impose such conditions upon permitting a corporation to do business within its limits as it may consider expedient, and that the condition may be made to depend on the payment of a designated license tax proportional to the amount of its capital used within the state. New York v. Roberts, 171 U. S. 658, 43 L. Ed. 323, 19 Sup. Ct. 58.

Petition for rehearing denied.

BUFORD, C.J., AND WHITFIELD AND DAVIS, J.J., concur.
ELLIS AND BROWN, J.J., dissent.