245 So.2d 240 (1970)
Earl FAIRCLOTH, As Attorney General, Rodger P. Doyle, C.C. Harrison, Jr., Eugene Toll, Charles Rex, Jr., and Thomas B. Wood, As and Constituting the Board of Business Regulation, State of Florida Department of Business Regulation, Etc., Old Florida Rum Company, Etc. and Jacquin-Florida Distilling Company, Etc., Appellants,
v.
MR. BOSTON DISTILLER CORP. and Hartley & Parker, Inc., Appellees.
OLD FLORIDA RUM COMPANY, Appellant,
v.
MR. BOSTON DISTILLER CORP., Hartley & Parker, Inc., Rodger P. Doyle, C.C. Harrison, Jr., and Thomas B. Wood, As and Constituting the Board of Business Regulation, State of Florida Department of Business Regulation, an Agency of the State of Florida and Jacquin-Florida Distillery Company, a Corporation, Appellees.
Nos. 39980, 40119.
Supreme Court of Florida.
October 21, 1970.
Rehearing Denied December 14, 1970.
*241 Wilbur E. Brewton, Jesse Warren, Jr., Earl Faircloth, Atty. Gen., and T.T. Turnbull, Tallahassee, for Bd. of Business Regulation, State of Fla., Dept. of Business Regulation, etc.
L. Grant Peeples, L. Ralph Smith, Jr., and Edgar M. Moore, Peeples, Smith & Moore, Tallahassee, for Old Florida Rum Co.
Julius F. Parker, Jr., Parker, Foster & Madigan, Tallahassee, for Jacquin Florida Distilling Co., Inc.
Robert M. Ervin, Wilfred C. Varn and Joseph C. Jacobs, Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellees.
ROBERTS, Acting Chief Justice.
These are direct appeals, pursuant to Fla. Const. art. V, § 4(2), F.S.A., from certain orders of the circuit court in and for Leon County and from a summary judgment entered by said court directly passing upon the validity of Chapter 70-225, Laws of Florida, which amended portions of Chapter 561, Florida Statutes, F.S.A. The Summary Judgment appears as follows:
"On motion for summary judgment the real issues between the parties turn upon the constitutional validity of certain portions of Chapter 70-225, Laws of Florida, as it applies to the rate of excise tax required of the plaintiffs with respect to alcoholic beverages manufactured in Florida exclusively from raw materials produced in Florida (except for flavoring extracts) and not blended with whiskey produced in and other state.
"Plaintiff, Mr. Boston Distillers Corporation, a Florida corporation, is a bottler of alcoholic beverages, as above described, but, its name to the contrary notwithstanding, it does not distill any such beverages. It bottles such beverages, but only in Florida. A majority of its capital stock is owned by another corporation Glenmore Distillers Company, which owns distilleries in another state. Glenmore also owns a controlling interest in two other corporations which bottle spirituous liquors in the States of Massachusetts and Georgia. Mr. Boston itself does no distilling and does no bottling except in Florida. Some of its products manufactured in Florida are, with the consent of Glenmore Distilleries Company, sold under a brand name identical to one used by Glenmore or Glenmore subsidiaries in marketing similar products in other states.
"The facts of the case are not in serious controversy and the Court's decision must turn on questions of law which have been argued by the original parties and the intervenors. It is
"Ordered, adjudged and declared:
"1. So much of Chapter 70-225 as provides that for alcoholic beverages to qualify for the reduced tax rate provided in Sections 561.46(5) (b), (6) (b), Section 561.461(2) and Section 561.64(2).
`* * * such beverage must be either distilled and bottled by a distiller licensed under Section 561.35(1) (d) and (f), who conducts distilling operations only in the State of Florida and in no other state, or bottled by a bottler *242 licensed under Section 561.35(1) (e) who conducts bottling operations only in the State of Florida and in no other state * * *'
is void and inoperative because in violation of the equal protection clause of Section 2, Article I of the Constitution of Florida in that it makes an unreasonable classification of persons for the purpose of taxation. Allowing the benefit of the reduced tax upon Florida products to one of two companies who bottle alcoholic beverages in Florida and denying such lower tax rate to the other merely because the first distills some such beverages in Florida (and does not distill in another state) is without any reasonable relationship to the classification of persons for the purpose of taxation. All liquors to be taxed at the lower rate must be distilled in Florida from Florida products. All must be bottled in Florida. Whether or not one bottler distills in Florida is wholly unrelated to the tax since there is no requirement that the spirits distilled in Florida be bottled in Florida or be the spirits with respect to which that manufacturer claims the lower tax rate.
"2. So much of Chapter 70-225, Laws of Florida, as provides:
`If a Florida bottler shall be a corporation, such corporation shall be deemed to be carrying on bottling operations in a state other than the state of Florida, when such corporation is affiliated with, directly or indirectly, or if such bottler produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any other corporation which is engaged in bottling spirituous liquors in any state other than the state of Florida, or when such corporation is controlled by or the majority of stock therein is owned by another corporation, which latter corporation owns or controls in any way the majority of stocks or controlling interest in any other corporation which is engaged directly or indirectly in bottling spirituous liquors in any state other than the state of Florida.'
is void and inoperative, being included in the act of violation of Section 6, Article III of the Constitution of Florida in that there is nothing in the title to the act to put any reasonable person on notice that the act would attempt to change the ordinary meaning of the words `distiller' and `bottler' or that the act would attempt to make two classes of `distillers' and two classes of `bottlers' and apply the `limited rate of taxation' to one class of distillers and not the other, and to one class of bottlers and not the other. The title to the act is clearly misleading as to this portion of its contents.
"3. So much of that portion of Chapter 70-225 quoted in the preceding paragraph as purports to deny to Mr. Boston the lower tax accorded other manufacturers merely because of the ownership of stock of Mr. Boston by Glenmore or use by Mr. Boston of a brand name also used by Glenmore is void and inoperative in that it denies Mr. Boston the equal protection of the law in violation of Section 2, Article I of the Constitution of Florida.
"The statute would deny its benefits to Mr. Boston who bottles beverages in Florida and give its benefits to a competitor who also bottles beverages in Florida merely because the competitor distills in Florida and stock of Mr. Boston is owned by a company which distills in another state, regardless of whether or not the distilling operations of the competitor in Florida use Florida raw materials or whether or not the beverages distilled by it in Florida are sold in Florida; and regardless of whether or not the distilling operations of the stockholders of Mr. Boston have any economic or legal relationship to the State of Florida. There is no reasonable *243 relationship between the distilling operations and the taxable transactions.
"When two legally identical products are manufactured and bottled in the same way and in strict compliance with law and are lawfully marketed under brand names any attempt to tax one product at a higher rate merely because it is marketed under a brand name that is also used in marketing in another state a legally identical product manufactured in another state is a denial of the equal protection of the law. There is nothing in the statute to suggest there is any reasonable relationship between the use of brand names and gross sales or net profits. Products bearing one brand name used only by one company manufacturing in one state may sell in large quantities in a large area. Another name franchised to two companies, operating in two states, may sell in smaller quantities in a smaller area. Two Florida companies operating in Florida, manufacturing similar products from raw materials produced in Florida cannot be classified differently merely because the trade name used by one to identify its product may be the same as, or similar to, the trade name of a similar product manufactured and marketed in another and possibly distant state.
"Done and ordered at Tallahassee, Leon County, Florida, this 22 day of July, A.D. 1970."
Appellants' arguments can be summarized as follows: (a) Chapter 70-225, Laws of Florida,[1] is a valid and proper *244 exercise of the Legislature's inherent power to tax and provide revenue for the state's operation; (b) the title of the bill, Senate Bill 1163, was sufficient to place complaining parties on notice as to the contents therein; and, (c) the lower court erred by limiting Old Florida Rum's participation as an intervenor to the rights of an amicus curiae, with the exception of the right to appeal, and further erred by denying Old Florida Rum's motion for a continuance of the hearing on the Motion for Summary Judgment.
The arguments of appellant-intervenor Old Florida Rum that the trial court erred in not allowing it to intervene with full rights of a party to the action, and in failing to grant a continuance on the hearing relating to entry of the summary judgment, are entirely without merit. The sole reason for initiation of the proceeding was to test the constitutional validity of the classification scheme in Section 1 that determines the excise tax rate to be collected from appellees Hartley and Parker and other licensed Florida distributors by virtue of their sale of Mr. Boston products. The excise tax rate applicable to sale of intervenors' products was not in issue. The summary judgment did not involve adjudication of any matter in which the intervenors have a direct and immediate interest justifying their intervention as full parties to the action.
The interest which entitles a person to intervene in a cause between other parties must be shown to be in the matter in litigation. It must be direct and immediate. The intervenor must show that he will gain or lose by the direct legal operation and effect of the judgment. A showing of indirect, inconsequential or contingent interest is wholly inadequate and is, at most, the only possible interest disclosed by the attempted intervenors. It is doubtful that the trial court had the power to do more than allow briefs and arguments as amicus curiae. The action allowing such parties to appeal is highly questionable but in the present posture of the litigation  the state itself having properly vested jurisdiction here by appeal  both *245 propositions are academic and merit no further comment.[2]
The trial court held that subsection (5) of Chapter 70-225, Laws of Florida, was void because its title did not meet the requirements of Article III, Section 6, of the Constitution of Florida  1968 Revision.[3] We find that the title as a whole, and in particular the addition of the phrase "and providing certain other limitations * * *", was sufficient to place the complaining parties on notice of the full contents of the act and adequately met the requirements of Article III, Section 6 that "the subject shall be briefly expressed in the title." Any person operating a business enjoying the favorable tax treatment of Chapter 561, Florida Statutes, F.S.A., who read the title of this bill should have been adequately notified that his operation might be affected in some manner by the legislation.
No useful purpose would be served by an extended discussion of the law pronounced in scores of cases on this question as related to and measured by the particular provision of this act and the contents of the title thereto. Our examination of both convinces us that the title gives fair notice to the public and the members of the Legislature that should reasonably lead to further inquiry into the body of the act. This satisfies the requirements set down by this Court in King Kole, Inc. v. Bryant:[4]
"The primary purpose of the requirements [of the Constitution in regard to title of acts] is to prevent `hodge-poge or log-rolling' legislation. Its object is to avoid surprise or fraud by fairly apprising the Legislature and the public of the subject of the legislation being enacted. * * *"
Having determined that the title to the act adequately encompassed the subject matter appearing in subsection (5) of Chapter 70-225, Laws of Florida, and having determined that Old Florida Rum's argument that it was denied proper participation in the case is without merit, we now consider whether the trial court properly found subsections (1) and (5) of Chapter 70-225 in violation of the equal protection provisions of Article I, Section 2, of the Florida Constitution  1968 Revision.
Subsection (1) of section 1, Chapter 70-225, Florida Statutes, provides, inter alia, for certain excise tax rates on alcoholic beverages, favoring those beverages manufactured in Florida exclusively from raw materials produced in Florida, (except for flavoring extracts) and not blended with out of state whiskey. A further condition or prerequisite to qualifying for the preferred or reduced rates fixed in the act, in addition to exclusive use of the Florida raw materials as pointed out supra, the said act provided that such beverage must be (1) either distilled and bottled by a distiller licensed under section 561.35(1) (d) and (f) who conducts distilling operations only in the state of Florida, and in no other state, or (2) bottled by a bottler *246 licensed under section 561.35(1) (e) who conducts bottling operations only in the state of Florida and in no other state, and that such beverage bear a Florida Sunburst emblem. By subsections (3) and (5) of section 1 of said act, the Legislature made a legislative definition as to what would constitute distilling operations and/or bottling operations in a state other than the state of Florida, so as to preclude such distiller or bottler from being entitled to the benefits of the special excise tax rate in question. Subsections (3) and (5) are quite lengthy and go into minute detail for clarity and guidance to affected corporations. These subsections are as follows:
"(3) If a Florida distiller shall be a corporation, such corporation shall be deemed to be engaged in distilling operations in a state other than Florida when such corporation is affiliated with, directly or indirectly, or if such distiller produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any other corporation, which is engaged in distilling spirituous liquors in any state other than Florida, or when such corporation is controlled by, or the majority of stock therein is owned by another corporation, which latter corporation owns or controls in any way the majority of stocks or controlling interest in any other corporation which is engaged directly or indirectly in distilling spirituous liquors in any state other than the state of Florida."
"(5) If a Florida bottler shall be a corporation, such corporation shall be deemed to be carrying on bottling operations in a state other than the state of Florida when such corporation is affiliated with, directly or indirectly, or if such bottler produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any other corporation which is engaged in bottling spirituous liquors in any state other than the state of Florida, or when such corporation is controlled by or the majority of stock therein is owned by another corporation, which latter corporation owns or controls in any way the majority of stocks or controlling interest in any other corporation which is engaged directly or indirectly in bottling spirituous liquors in any state other than the state of Florida."
Prior to the passage of Chapter 70-225, a preferred or reduced excise tax rate was granted on spirituous beverages produced from Florida products. This was the only criteria necessary to qualify for the lower tax rate. According to an Attorney General's opinion in 1969, blending of out of state whiskey with Florida grown distilled spirituous beverages was permitted, which could have a serious impact upon both the enforcement of the Act and the amount of state revenue. In order to overcome these factors, the appellant, the Board of Business Regulations, sought legislative relief by modification of the then existing law so as not to prejudice the tax revenue of the State of Florida. Chapter 70-225 is the Legislature's answer to this problem.
Mr. Boston Distiller Corp. and Hartley and Parker, Inc. (distributors for Mr. Boston), have by complaint for a declaratory judgment, attacked the constitutionality of said Chapter 70-225 inter alia, insofar as it affects the tax rate to be paid by them on their products, alleging inter alia, that the new standards for determining whether their products qualifies for the lower rate of excise taxation are such unreasonable, arbitrary, capricious and confiscatory classifications as to be violative of the Equal Protection and Due Process Provisions of the Constitutions of Florida and of the United States, particularly the provisions of subsections (1) and (5) of section 1 of said Act.
*247 The lower court held the following portion of subsection (1) of section 1 of Chapter 70-225:
"* * * such beverage must be either distilled and bottled by a distiller licensed under Section 561.35(1) (d) and (f), who conducts distilling operations only in the State of Florida and in no other state, or bottled by a bottler licensed under Section 561.35 (1) (e) who conducts bottling operations only in the State of Florida and in no other state * * *"
void and inoperative because it is in violation of the equal protection clause of section 2, Article 1, Constitution of Florida in that it makes an unreasonable "classification of persons for the purpose of taxation." The court stated in its order in support of its holding the classification to be unreasonable, an erroneous statement of the statutory provision. The court said: "All liquors to be taxed at the lower rate must be distilled in Florida from Florida products. All must be bottled in Florida." This is an incorrect statement of the provisions of subsection (1) of Section 1 of said Act. The correct statement as found in said subsection is to the effect that the beverage must be either distilled and bottled by a distiller * * * who conducts distilling operations in no other state than Florida or be bottled by a bottler licensed under Florida law, who conducts bottling in no other state. The distinction is that it must be bottled by a bottler who does not carry on the same operation in another state. It appears to us that this is a reasonable classification to meet the avowed purpose stated by the Board of Business Regulations as its need for the Act in question in order to safeguard the tax revenue of the state. We can easily visualize the difficulty of policing an out of state bottling operation to ascertain that there is no mixing or blending with out of state whiskey which could so easily prejudice the tax revenue of the state.
As pointed out by the appellants, this court has in the past on numerous occasions upheld the validity of special tax exemptions or rates which were granted for the purpose of encouraging state industry. In the instant case, it is significant that only a small investment would be necessary to carry on an operation such as that of the appellee Mr. Boston, which could be suspended or closed for any reason or indication of economic losses, whereas, the larger investments, with an attendant larger tax, such as that of the two other interested distillers and/or bottlers, where the total bottling operation was in Florida, would render impracticable or unfeasible such suspension or closing.
The limiting of the classifications to bottlers who bottle exclusively in Florida, is not an unreasonable classification nor does it violate the equal protection and due process provisions of the Florida and United States Constitutions. All that the appellee, Mr. Boston, has to do to qualify equally with the other two named bottlers is to meet the same statutory requirements. There are no special benefits going to one Florida based producer over another Florida based producer.
This court in Jacksonville Gas Co. v. Lee, 110 Fla. 61, 148 So. 188 (1932), said:
"Excise taxes may be imposed upon some corporations and not upon others, and some corporations may be required to pay more kinds of excise taxes than other corporations when the classifications for the taxes have a reasonable basis and are not arbitrarily imposed on some and not on others. * * *"
Again, we find this statement of this court in King Kole, Inc. v. Bryant, 178 So.2d 2 (1965):
"It is sufficient to note that the power to classify for purposes of excise taxation is of wide range and flexibility. Once exercised it will not be disturbed unless the result is plainly unequal, arbitrary or discriminatory. * * *"
*248 When considered in the light of the avowed purpose for the adoption of the Act in question as stated by the appellant, Board of Business Regulation, i.e. to protect state revenue, and applying the broad guidelines enumerated in the last two preceding citations, supra, from this court, we must disagree with the trial court's finding that the equal protection and due process provisions have been violated.
In State ex. rel. Southern Brewing Company v. Long, 132 Fla. 450, 181 So. 421, this court was confronted with a statute which imposed a tax of seven cents per gallon on malt beverages when sold in bulk or seven-eights (7/8) of a cent per pint or fraction thereof when selling in containers of less than one gallon. The plaintiff contended that said statute was unconstitutional on the ground that the tax was dependent upon the method of doing business. The court rejected this contention and held that the act did not require anyone to sell by a prescribed method, but merely classified two methods of sale and permitted the manufacturer or distributor to choose the method he preferred. The court said:
"Both classes are limited by prescribed rules, but all in the class regulated alike. It is not shown that the classification is arbitrary or works unequally on the persons affected."
The court in said case held the Act complained of to be a reasonable exercise of the police power. In the case sub judice the tax rate imposed is dependent on the manner in which the manufacturer or bottler of the beverage elects to do business. If the distiller or bottler is an integral part of a nationwide or at least an interstate distiller or bottler, as defined in subsections (3) and (5) of Section 1 of Chapter 70-225, using similar brand names and possibly blending with out of state whiskey, (which can't be reasonably detected by the Board of Business Regulations) and such distiller or bottler, although he uses only alcohol made from raw Florida material, prefers to retain the advantages of the joint ownership with the out of state distiller or bottler, then the consequence thereof is the loss of the preferential tax rate. It is a choice not imposed by statute but by the affected corporations' chosen method of doing business. This does not constitute an arbitrary discrimination.
In the case sub judice, the lower court had before it a sworn complaint and a motion for summary judgment accompanied by two affidavits, one from an officer of Mr. Boston and one from an officer of Hartley & Parker, Inc. each of which mainly verify portions of the complaint only, and limit their complaint to the fact that if Mr. Boston is subjected to the regular excise tax on alcoholic beverages instead of the preferential tax provided in Chapter 70-225, the price differential necessarily to follow would result in a decrease in the sale of the product of Mr. Boston. These affidavits do not attempt to show any reason why Mr. Boston cannot or will not restructure its operation so as to meet the requirements of said Act.
It appears to us that if the preferential tax break given on alcohol beverage manufactured exclusively from Florida raw material is valid, even though the same is much lower than the identical or similar products not using exclusively Florida raw material, then the same would hold true in limiting those entitled to the preferential treatment to exclusive Florida based bottlers or distillers. The appellees have not complained of the portion of the Act dealing only with the raw Florida material.
The Legislature is given rather wide latitude in determining methods of providing tax revenue for the state as well as in granting encouragement to new Florida based industry, and when Acts are passed for these purposes as well, of course, as other purposes, all reasonable presumptions are in favor of the constitutionality of such acts. This court has ably set forth rules by which all courts should be bound *249 in determining the constitutionality of an act in the case of Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320, 322, wherein we find this language:
"(1) On its face every act of the Legislature is presumed to be constitutional;
(2) every doubt as to its constitutionality must be resolved in its favor; (3) if the act admits of two interpretations, one of which would lead to its constitutionality and the other to its unconstitutionality, the former rather than the latter must be adopted; (4) the constitutionality of a statute should be determined by its practical operation and effect; (5) in determining its constitutional validity, courts should be guided by its substance and manner of operation rather than the form in which the act is cast; and (6) after indulging all presumptions in favor of the act, if it is found to be in positive conflict with some provision of organic law, it becomes the duty of the court to strike it down."
Also in Tyson v. Lanier, Fla., 156 So.2d 833, which upheld the validity of the so called "Green Belt Law" this court said:
"We are required to look for a reason to uphold the act and to adopt any reasonable view that will do so."
It appears to us that the classifications made by the Legislature are neither unreasonable nor discriminatory, but treat all like parties equally, and certainly when viewed in the light of the guidelines enumerated supra in Gray v. Central Florida Lumber Co., we are compelled to hold that Chapter 70-225 F.S. is constitutionally sound and valid and a proper exercise of legislative authority. It was error for the lower court to hold otherwise.
Accordingly the judgment of the lower court is affirmed in part and reversed in part and remanded for further consideration not inconsistent with this opinion.
It is so ordered.
CARLTON, ADKINS and BOYD, JJ., and SPECTOR, District Court Judge, concur.
DREW, J., concurs specially with opinion.
DREW, Justice (concurring specially).
I concur in the decision and judgment in this cause, but in so doing I wish to record my views on one facet of this litigation which appears to have been overlooked by all the parties to the cause.
This is one of the first cases to appear before the Court involving equal protection under the 1968 Revision of the Florida Constitution. The equal protection guarantee appeared in the 1885 Constitution as Section (1) of the Declaration of Rights, and read as follows:
"Section 1. All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursueing [sic] happiness and obtaining safety." [Emphasis added.]
A similar guarantee appears in the 1968 Revision as Section 2 of Article I, "Basic rights":
"All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race or religion." [Emphasis added.]
"All men" were guaranteed equal protection by the 1885 wording, whereas in the 1968 *250 Revision that guarantee is now afforded "all natural persons." By including the term "natural," the drafters of the 1968 Revision have retained in different words the meaning of "all men" used in the 1885 version, thereby continuing to exclude application to artificial "persons" created as legal fictions, such as corporations.[1] But just as the section does not grant equal protection to a corporation, likewise it cannot  and does not pretend to  take away the corporation's well-established right to equal protection granted by Section 1 of the Fourteenth Amendment to the United States Constitution.[2]
By these remarks I merely point out that denial of equal protection to a corporation necessarily refers to the guarantee in Section 1 of the Fourteenth Amendment to the United States Constitution, rather than Article I, Section 2 of the Florida Constitution  1968 Revision.
NOTES
[1] For clarity of presentation and future reference Section 1., Chapter 70-225, Laws of Florida, including the title, follows in full although this case is only directly concerned with subsections (1) and (5).

"An Act relating to tax rate on Florida-grown products; amending Chapter 561, Florida Statutes, by adding a new section limiting the tax rate accorded beverages manufactured in Florida from Florida-grown products to such beverages manufactured exclusively from Florida-grown products, and not blended with out-of-state whiskey, and distilled and bottled by a distiller who conducts distilling operations only in the state of Florida and in no other state, or bottled by a bottler who conducts bottling operations only in the state of Florida and in no other state; and providing certain other limitations; amending Sections 561.46(5) (b) and (6) (b), 561.461(2) and 561.64(2), Florida Statutes, by increasing the tax rate on alcoholic beverages made from Florida grown products; providing an effective date.
"Be It Enacted by the Legislature of the State of Florida:
"Section 1. Chapter 561, Florida Statutes, is amended by adding a new section to read:
"Limitations and qualifications on tax rate for Florida-grown products. 
"(1) In order to qualify, in whole or in part, for the Florida tax rate provided in section 561.46(5) (b), (6) (b), section 561.461(2) and section 561.64(2), an alcoholic beverage must be manufactured exclusively from raw materials produced in the state of Florida (except for flavoring extracts) and may not be blended with whiskey produced in any other state; provided further, that such beverage must be either distilled and bottled by a distiller licensed under section 561.35(1) (d) and (f), who conducts distilling operations only in the state of Florida and in no other state, or bottled by a bottler licensed under section 561.35(1) (e) who conducts bottling operations only in the state of Florida and in no other state; provided further, that such beverages shall bear a Florida sunburst emblem no smaller than one-half (1/2) inch in diameter reading "Made in Florida".
"(2) If a Florida distiller shall be an individual or co-partnership, such individual or co-partnership shall be deemed to be conducting distilling operations in a state other than Florida in the event the individual or any member of the co-partnership is interested or connected, directly or indirectly, or if such distiller produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any corporation which is engaged, directly or indirectly, or through any subsidiary or affiliate corporation, including any stock ownership as set forth in subsection (3) of this section, in distilling spirituous liquors in any state other than the state of Florida.
"(3) If a Florida distiller shall be a corporation, such corporation shall be deemed to be engaged in distilling operations in a state other than Florida when such corporation is affiliated with, directly or indirectly, or if such distiller produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any other corporation, which is engaged in distilling spirituous liquors in any state other than Florida, or when such corporation is controlled by, or the majority of stock therein is owned by another corporation, which latter corporation owns or controls in any way the majority of stocks or controlling interest in any other corporation which is engaged directly or indirectly in distilling spirituous liquors in any state other than the state of Florida.
"(4) If a Florida bottler is an individual or co-partnership, such individual or co-partnership shall be deemed to be conducting bottling operations in a state other than the state of Florida in the event the individual or any member of the co-partnership is interested or connected, directly or indirectly, or if such bottler produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any corporation which is engaged, directly or indirectly, or through any subsidiary or affiliate corporation, including any stock ownership as set forth in subsection (5) of this section in bottling spirituous liquors in any state other than the state of Florida.
"(5) If a Florida bottler shall be a corporation, such corporation shall be deemed to be carrying on bottling operations in a state other than the state of Florida when such corporation is affiliated with, directly or indirectly, or if such bottler produces an alcoholic beverage sold under a brand name identical or deceptively similar to the brand name of any other corporation which is engaged in bottling spirituous liquors in any state other than the state of Florida, or when such corporation is controlled by or the majority of stock therein is owned by another corporation, which latter corporation owns or controls in any way the majority of stocks or controlling interest in any other corporation which is engaged directly or indirectly in bottling spirituous liquors in any state other than the state of Florida."
[2] See Krouse v. Palmer, 131 Fla. 444, 179 So. 762 (1938); Florida Gas Co. v. American Employers' Insurance Co., 218 So.2d 197 (3d Dist.Ct.App.Fla. 1969); and United States v. State of Florida, 179 So.2d 890 (3d Dist.Ct.App.Fla. 1965). 39 Am. Jur. Parties § 61 (1942), and cases cited therein.
[3] "Laws. Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title. No law shall be revised or amended by reference to its title only. Laws to revise or amend shall set out in full the revised or amended act, section, subsection or paragraph of a subsection. The enacting clause of every law shall read: `Be It Enacted by the Legislature of the State of Florida:'". Fla. Const. art. III, § 6 (1968).
[4] 178 So.2d 2, 4 (Fla. 1965). See also, Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320 (1932), and State ex rel. McQuaid v. County of Duval, 23 Fla. 483, 3 So. 193 (1887).
[1] The term "all persons" was used in the draft submitted to the Legislature by the Constitution Revision Commission. Addition of the word "natural" was offered as an amendment by the Liaison Committee, and was subsequently adopted by both Houses and included in the final draft approved by the People. The amendment was submitted to the House of Representatives, sitting as the Committee of the Whole, by The Honorable Richard Pettigrew, Chairman of the Liaison Committee, who offered the following explanation: Rep. Pettigrew: "* * * Those would be the changes, plus one other that, it is my understanding, editorial and drafting committees of the two Houses have recommended. There is some concern that the word `persons' includes corporations in Section 2 `Basic rights,' and it is recommended that the word `natural' be added before the word `persons' in the first line and the first sentence of Section 2, so that the word would be `all natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, and to be rewarded for industry, to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race or religion.' That would be the entire Section 2." * * * Rep. Scarborough: "Mr. Pettigrew in 620 here, two questions in Section 2. You've added the word `natural persons.' Why do you need `natural'? What is * * *" Rep. Pettigrew: "The word `natural' persons is to  In law at the present time, Mr. Scarborough, `persons' include corporations. It's a fiction that's developed. * * *" Rep. Scarborough: "All right, that answers that question." Rep. Pettigrew: "In law, and it was a very important legal fiction, so that's the reason we are doing it to exclude their having the rights guaranteed under the basic rights provision." Rep. Scarborough: "Very good." From unofficial tape recording of the House of Representatives sitting as the Committee of the Whole, meeting on August 26, 1967, on file in the Library of the Supreme Court of Florida.
[2] U.S.Const. art. VI; Louis K. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699 (1933). See Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282 (1914); State v. Atlantic Coast Line Ry. Co., 56 Fla. 617, 47 So. 969 (1908); and Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 So. 1001 (1908). See also, Ward Baking Co. v. City of Fernandina, 29 F.2d 789 (5th Cir. Fla. 1928).