MILLS, Judge.
Jacquin appeals from a final summary judgment entered in a declaratory judgment action which construed Sections 565.-12 and 565.14, Florida Statutes (1975), so as to require Jacquin to pay the higher excise tax required by Section 565.12 on 61,600.65 wine gallons of rum manufactured by it.
The issue here is whether rum resulting from a mixing of rum made from Florida raw materials with rum made from out-of-state raw materials should be wholly taxed under Section 565.12(l)(a) and (2)(a) or pro-ratedly taxed under Section 565.12(l)(b) and (2)(b) based on the percentage of Florida produced rum contained in the mixed product.
The facts in this case are not in dispute. Jacquin is a distiller and bottler who conducts its operations only in Florida and who is licensed under Section 565.03(l)(a) and (b), Florida Statutes (1975). Jacquin manufactured 11,004 proof gallons of rum made from cane molasses produced and manufactured out of state from sugarcane grown out of state. Later, it mixed this rum with 35,171.3 proof gallons of rum manufactured in Florida exclusively from Florida grown and produced products. The mixture resulted in 61,600.65 wine gallons of rum of which 61,348.65 gallons were under 48 percent alcohol by weight and 252 gallons were over 48 percent alcohol by weight.
The Division demanded $126,808.01 from Jacquin in excise taxes on the rum and advised it that if not paid within ten days a tax warrant would be issued. This was the maximum tax provided by Section 565.-12(l)(a) and (2)(a). Jacquin filed a declaratory judgment action seeking a determination that it owed a lesser sum in taxes and seeking an order temporarily restraining the Division from issuing the tax warrant. The restraining order was entered. Subsequently, the trial court entered a summary judgment in favor of the Division and dissolved the restraining order.
Section 565.12(l)(a) and (2)(a) sets the tax rate on liquor between 14 and 48 percent alcohol by weight and more than 48 percent alcohol by weight. Section 565.12(l)(b) and (2)(b) sets a lower tax rate for liquor which is manufactured and bottled in Florida from certain enumerated Florida grown products.
Section 565.14(1) sets forth the requirements necessary to qualify for the lower tax rate. The tax to be applied under Section 565.12 to this case depends upon the construction of the first sentence of Section 565.14(1) which reads:
“In order to qualify, in whole or in part, for the Florida tax rate provided in s. 565.12(l)(b), (2)(b), an alcoholic beverage must be manufactured exclusively from raw materials, except for flavoring extracts, produced in Florida and may not be blended with whiskey produced in any other state. . . . ”
In construing this statute, we must determine the legislative intent and, if possible, give meaning to all words and phrases used by the legislature in the statute.
Chapter 70-225, Laws of Florida [Chapter 565, F.S. (1975)], was adopted by the legislature to protect and encourage state industry and to protect state revenues by stopping the blending of out-of-state whiskey with in-state whiskey. Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240 (Fla.1970).
The title to Section 565.14 which reads “requiremehts necessary to qualify for tax rate for Florida-grown products” is additional indication of the legislative intent to give preferential tax treatment to alcoholic beverages made from Florida grown products.
Section 565.14(1) states that in order to qualify for the lower tax rate provided by Section 565.12 the beverage must be manufactured exclusively from raw materials produced in Florida and may not be blended with whiskey produced in any other state.
Section 565.12(l)(b) and (2)(b) provides that the lower tax rate applies to beverages manufactured and bottled in Florida from certain enumerated Florida grown products.
Clearly, the legislature intended that the tax break was limited to beverages that *342 were manufactured in Florida exclusively from specific products grown in Florida and bottled in Florida.
Jacquin argues that because Section 565.-14(1) does not specifically prohibit proration of taxes where the beverage is produced from a mixture of Florida grown products and out-of-state grown products, because the section must be construed strictly and because the section must be construed in favor of the Florida taxpayer, it does not preclude a proration of the tax depending upon where the raw materials were produced. Thus, the use of the term “in part” in the section contemplates a proration of taxes under facts such as we have in this case.
We do not agree. The legislature went to great length to set forth the Florida grown products which qualify for the lower tax. This clearly indicates its intent to exclude out-of-state raw materials from qualifying for the lower tax rate. “In part” as used in the section permits a proration of the tax only when Florida grown raw materials enumerated in Section 565.-12(l)(b) and (2)(b) are mixed with Florida grown non-Section 565.12(l)(b) and (2)(b) enumerated raw materials.
Jacquin next argues that Section 565.-14(1) provides for the payment of taxes “in part” upon alcohol distilled in Florida so long as it is not blended with whiskey that is produced in another state. It contends that it blended out-of-state rum, not whiskey.
Again, we do not agree. To qualify for the lower tax the beverage must be produced exclusively from Florida products and not blended with out-of-state whiskey. It is unnecessary that we reach the latter requirement because Jacquin’s admittedly does not qualify for the first requirement.
The trial court correctly construed Sections 565.12 and 565.14(1) and properly entered a final summary judgment for the Division. The lower tax is permissible in part when mixing occurs, if the product mixed is manufactured and bottled from enumerated Florida products and nonenu-merated Florida products. The action of Jacquin in mixing the out-of-state grown products with Florida grown products disqualifies the entire resulting product from the lower tax.
We affirm the final summary judgment.
McCORD, C. J., and BOYER, J., concur.